MATTHEW D. POWERS (Bar No. 104795)
Email:  matthew.powers@weil.com
EDWARD R. REINES (Bar No. 135960)
Email:  edward.reines@weil.com
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802-3000
Facsimile:  (650) 802-3100

DAVID J. HEALEY
Email: david.healey@weil.com
ANITA E. KADALA
Email: anita.kadala@weil.com
WEIL, GOTSHAL & MANGES LLP
700 Louisiana, Suite 1600
Houston, Texas 77002
Telephone:  (713) 546-5000
Facsimile:  (713) 224-9511

DAVID C. RADULESCU
Email: david.radulescu@weil.com
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

BRIAN C. RIOPELLE
E-mail:  briopelle@mcguirewoods.com
MCGUIRE WOODS, LLP
One James Center
901 East Cary Street
Richmond, Virginia 23219-4030
Telephone: (804) 775-1000
Facsimile: (804) 775-1061

Attorneys for Defendants
SAMSUNG ELECTRONICS CO., LTD.,
SAMSUNG ELECTRONICS AMERICA, INC.,
SAMSUNG SEMICONDUCTOR, INC., and
SAMSUNG AUSTIN SEMICONDUCTOR, L.P.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

| | |
|---|---|
| RAMBUS INC., <br>       Plaintiff, <br><br> v. <br> HYNIX SEMICONDUCTOR INC., HYNIX SEMICONDUCTOR AMERICA INC., HYNIX SEMICONDUCTOR MANUFACTURING AMERICA INC., <br><br> SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG SEMICONDUCTOR, INC., SAMSUNG AUSTIN SEMICONDUCTOR, L.P., <br><br> NANYA TECHNOLOGY CORPORATION, NANYA TECHNOLOGY CORPORATION U.S.A., <br><br> INOTERA MEMORIES, INC., <br>       Defendants. | Case No. C 05 00334 RMW <br><br> FIRST AMENDED ANSWER TO FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT AND JURY DEMAND AND AFFIRMATIVE DEFENSES AND COUNTERCLAIMS <br><br> JURY TRIAL DEMANDED |

## FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendants and Counterclaim Plaintiffs Samsung Electronics Co., Ltd., Samsung Electronics America, Inc., Samsung Semiconductor, Inc., and Samsung Austin Semiconductor, L.P., (collectively "Samsung") respectfully answer Plaintiff Rambus Inc.'s ("Rambus") First Amended Complaint for Patent Infringement and Jury Demand ("Complaint") in correspondingly numbered paragraphs as follows:

## THE PARTIES

Samsung admits that Rambus is a corporation organized and existing under the laws of Delaware. Samsung is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 1 of the Complaint, and, on that basis, denies the same.

1. Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 of the Complaint, and, on that basis, denies the same.

2. Samsung admits that Samsung Electronics Co., Ltd. is a corporation organized and existing under the laws of Korea, with a principal place of business at 250, 2-Ka, Taepyung-Ro, Chung-Ku, Seoul, South Korea, 100-742. Samsung admits that Samsung Electronics America, Inc. is a wholly owned subsidiary of Samsung Electronics Co., Ltd., with its

principal place of business at 105 Challenger Road, Ridgefield Park, NJ 07660.  Samsung admits that Samsung Semiconductor, Inc. is a wholly owned subsidiary of Samsung Electronics Co., Ltd., with its principal place of business at 3655 North First Street, San Jose, CA 95134.  Samsung admits that Samsung Austin Semiconductor, L.P. is a limited partnership owned by Samsung Electronics Co., Ltd., with its principal place of business at 12100 Samsung Boulevard, Austin, TX 78754.  Samsung denies that it transacts substantial business in this district on an ongoing basis.

3. Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 of the Complaint, and, on that basis, denies the same.

4. Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 5 of the Complaint, and, on that basis, denies the same.

5. To the extent Paragraph 6 applies to Samsung, Samsung denies those allegations.  With respect to the other defendants, Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and, on that basis, denies the same.

### NATURE OF THE ACTION

6. Samsung admits the Complaint purports to be an action for patent infringement, but denies any wrongdoing or liability.

7. To the extent Paragraph 8 applies to Samsung, Samsung denies those allegations.  With respect to the other defendants, Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8 of the Complaint, and, on that basis, denies the same.

### JURISDICTION AND VENUE

8. Samsung admits that the Complaint purports to be an action for patent infringement, but denies any wrongdoing or liability.  Samsung admits that this Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

9. Samsung does not contest personal jurisdiction in this Court.  With respect to the other defendants, Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 of the Complaint, and on that basis, denies the same.  To

the extent not expressly admitted herein, Samsung denies the remaining allegations of Paragraph 10.

10.     Samsung does not contest that venue is proper in this Court.  With respect to the other defendants, Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and on that basis, denies the same.  To the extent not expressly admitted herein, Samsung denies the remaining allegations of Paragraph 11.

## PURPORTED FACTUAL BACKGROUND

11.     Samsung admits that Rambus has executed licenses in the past.  To the extent not expressly admitted herein, Samsung denies the remaining allegations in Paragraph 12 of the Complaint.

12.     Samsung admits that it is in the business of, *inter alia*, making, using, selling importing, and/or offering for sale products that consist of or include DDR2, GDDR2, and/or GDDR3 memory components, and DDR2 memory modules.  Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 13, and on that basis, deny the same.  To the extent not expressly admitted herein, Samsung denies the remaining allegations of Paragraph 13 of the Complaint.

13.     Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 of the Complaint, and on that basis, denies the same.

14.     Samsung admits that it has made, used, sold, imported or offered for sale products that consist of or include DDR2, GDDR2, and/or GDDR3 memory components, and DDR2 memory modules.  Defendants lack sufficient information to admit or deny the remaining allegations of Paragraph 15, and on that basis, deny the same.  To the extent not expressly admitted herein, Samsung denies the remaining allegations of Paragraph 15 of the Complaint.

15.     Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 of the Complaint, and on that basis, denies the same.

16.     Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, and on that basis, denies the same.

17.     Samsung admits that on its face, U.S. Patent No. 6,182,184 (the "'184 Patent") purports to have issued on January 30, 2001, and to be entitled "Method of Operating a Memory Device Having a Variable Data Input Length," but denies it was duly and legally issued. All other allegations of Paragraph 18 not specifically admitted herein are denied.

18.     Samsung admits that on its face, U.S. Patent No. 6,260,097 (the "'097 Patent") purports to have issued on July 10, 2001, and to be entitled "Method and Apparatus for Controlling a Synchronous Memory Device," but denies it was duly it was duly and legally issued. All other allegations of Paragraph 19 not specifically admitted herein are denied.

19.     Samsung admits that on its face, U.S. Patent No. 6,266,285 (the "'285 Patent") purports to have issued on July 24, 2001, and to be entitled "Method of Operating a Memory Device Having Write Latency," but denies it was duly and legally issued.  All other allegations of Paragraph 20 not specifically admitted herein are denied.

20.     Samsung admits that on its face, U.S. Patent No. 6,314,051 (the "'051 Patent") purports to have issued on November 6, 2001, and to be entitled "Memory Device Having Write Latency," but denies it was duly and legally issued.  All other allegations of Paragraph 21 not specifically admitted herein are denied.

21.     Samsung admits that on its face, U.S. Patent No. 6,324,120 (the "'120 Patent") purports to have issued on November 27, 2001, and to be entitled "Memory Device Having a Variable Data Output Length," but denies it was duly and legally issued.  All other allegations of Paragraph 22 not specifically admitted herein are denied.

22.     Samsung admits that on its face, U.S. Patent No. 6,378,020 (the "'8,020 Patent") purports to have issued on April 23, 2002, and to be entitled "System Having Double Data Transfer Rate and Intergrated [sic] Circuit Therefor," but denies it was duly and legally issued.  All other allegations of Paragraph 23 not specifically admitted herein are denied.

23.     Samsung admits that on its face, U.S. Patent No. 6,426,916 (the "'916 Patent") purports to have issued on July 30, 2002, and to be entitled "Memory Device Having a Variable Data Output Length and a Programmable Register," but denies it was duly and legally issued.  All other allegations of Paragraph 24 not specifically admitted herein are denied.

24. Samsung admits that on its face, U.S. Patent No. 6,452,863 (the "'863 Patent") purports to have issued on September 17, 2002, and to be entitled "Method of Operating a Memory Device Having a Variable Data Input Length," but denies it was duly and legally issued. All other allegations of Paragraph 25 not specifically admitted herein are denied.

25. Samsung admits that on its face, U.S. Patent No. 6,493,789 (the "'789 Patent") purports to have issued on December 10, 2002, and to be entitled "Memory Device Which Receives Write Masking and Automatic Precharge Information," but denies it was duly and legally issued. All other allegations of Paragraph 26 not specifically admitted herein are denied.

26. Samsung admits that on its face, U.S. Patent No. 6,496,897 (the "'897 Patent") purports to have issued on December 17, 2002, and to be entitled "Semiconductor Memory Device Which Receives Write Masking Information," but denies it was duly and legally issued. All other allegations of Paragraph 27 not specifically admitted herein are denied.

27. Samsung admits that on its face, U.S. Patent No. 6,546,446 (the "'6,446 Patent") purports to have issued on April 8, 2003, and to be entitled "Synchronous Memory Device Having Automatic Precharge," but denies it was duly and legally issued. All other allegations of Paragraph 28 not specifically admitted herein are denied.

28. Samsung admits that on its face, U.S. Patent No. 6,564,281 (the "'281 Patent") purports to have issued on May 13, 2003, and to be entitled "Synchronous Memory Device Having Automatic Precharge," but denies it was duly and legally issued. All other allegations of Paragraph 29 not specifically admitted herein are denied.

29. Samsung admits that on its face, U.S. Patent No. 6,584,037 (the "'037 Patent") purports to have issued on June 24, 2003, and to be entitled "Memory Device Which Samples Data After an Amount of Time Transpires," but denies it was duly and legally issued. All other allegations of Paragraph 30 not specifically admitted herein are denied.

30. Samsung admits that on its face, U.S. Patent No. 6,697,295 (the "'295 Patent") purports to have issued on February 24, 2004, and to be entitled "Memory Device Having a Programmable Register," but denies it was duly and legally issued. All other allegations of Paragraph 31 not specifically admitted herein are denied.

31.     Samsung admits that on its face, U.S. Patent No. 6,701,446 (the "'1,446 Patent") purports to have issued on March 2, 2004, and to be entitled "Power Control System for Synchronous Memory Device," but denies it was duly and legally issued.  All other allegations of Paragraph 32 not specifically admitted herein are denied.

32.     Samsung admits that on its face, U.S. Patent No. 6,715,020 (the "'5,020 Patent") purports to have issued on March 30, 2004, and to be entitled "Synchronous Integrated Circuit Device," but denies it was duly and legally issued.  All other allegations of Paragraph 33 not specifically admitted herein are denied.

33.     Samsung admits that on its face, U.S. Patent No. 6,751,696 (the "'696 Patent") purports to have issued on June 15, 2004, and to be entitled "Memory Device Having a Programmable Register," but denies it was duly and legally issued.  All other allegations of Paragraph 34 not specifically admitted herein are denied.

34.     Samsung admits that on its face, U.S. Patent No. 6,807,598 (the "'598 Patent") purports to have issued on October 19, 2004, and to be entitled "Integrated Circuit Device Having Double Data Rate Capability," but denies it was duly and legally issued.   All other allegations of Paragraph 35 not specifically admitted herein are denied.

35.     Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 of the Complaint, and on that basis, denies the same.

36.     To the extent Paragraph 37 applies to Samsung, Samsung denies those allegations.  With respect to the other defendants, Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 of the Complaint, and on that basis, denies the same.

37.     To the extent Paragraph 38 applies to Samsung, Samsung denies those allegations.  With respect to the other defendants, Samsung is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint, and on that basis, denies the same.

**COUNT 1:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,182,184**

38.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-38 above.

39.     Samsung denies the allegations in Paragraph 40 of the Complaint.

**COUNT 2:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,260,097**

40.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-40 above.

41.     Samsung denies the allegations in Paragraph 42 of the Complaint.

**COUNT 3:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,266,285**

42.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-42 above.

43.     Samsung denies the allegations in Paragraph 44 of the Complaint.

**COUNT 4:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,314,051**

44.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-44 above.

45.     Samsung denies the allegations in Paragraph 46 of the Complaint.

**COUNT 5:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,324,120**

46.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-46 above.

47.     Samsung is without knowledge or information sufficient to admit or deny the allegations in Paragraph 48, and on that basis, denies the same.

**COUNT 6:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,378,020**

48.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-48 above.

49.     Samsung is without knowledge or information sufficient to admit or deny the allegations in Paragraph 50, and on that basis, denies the same.

**COUNT 7: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,426,916**

50.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-50 above.

51.     Samsung is without knowledge or information sufficient to admit or deny the allegations in Paragraph 52, and on that basis, denies the same.

**COUNT 8: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,452,863**

52.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-52 above.

53.     Samsung is without knowledge or information sufficient to admit or deny the allegations in Paragraph 54, and on that basis, denies the same.

**COUNT 9: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,493,789**

54.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-54 above.

55.     Samsung denies the allegations in Paragraph 56 of the Complaint.

**COUNT 10: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,496,897**

56.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-56 above.

57.     Samsung denies the allegations in Paragraph 58 of the Complaint.

**COUNT 11: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,546,446**

58.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-58 above.

59.     Samsung denies the allegations in Paragraph 60 of the Complaint.

**COUNT 12: DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,564,281**

60.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-60 above.

61.     Samsung denies the allegations in Paragraph 62 of the Complaint.

**COUNT 13:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,584,037**

62.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-62 above.

63.     Samsung denies the allegations in Paragraph 64 of the Complaint.

**COUNT 14:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,697,295**

64.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-64 above.

65.     Samsung denies the allegations in Paragraph 66 of the Complaint.

**COUNT 15:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,701,446**

66.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-66 above.

67.     Samsung denies the allegations in Paragraph 68 of the Complaint.

**COUNT 16:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,715,020**

68.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-68 above.

69.     Samsung denies the allegations in Paragraph 70 of the Complaint.

**COUNT 17:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,751,696**

70.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-70 above.

71.     Samsung denies the allegations in Paragraph 72 of the Complaint.

**COUNT 18:  DENIAL OF ALLEGED INFRINGEMENT OF U.S. PATENT NO. 6,807,598**

72.     Samsung refers to and incorporates herein its answers as provided in Paragraphs 1-72 above.

73.     Samsung denies the allegations in Paragraph 74 of the Complaint.

**DENIAL OF RAMBUS'S PRAYER FOR RELIEF**

74.     Samsung denies that Rambus is entitled to be awarded any of the relief sought in its prayer for relief against Samsung.  Samsung has not directly, indirectly, contributorily and/or by inducement, literally and/or by the doctrine of equivalents infringed—willfully or

1   otherwise—any of the patents asserted by Rambus.  Rambus is not entitled to recover statutory

2   damages, compensatory damages, or accounting, injunctive relief, costs, fees, interest, or any other

3   type of recovery from Samsung.  Rambus's prayer should, therefore, be denied in its entirety and

4   with prejudice, and Rambus should take nothing therefore.  Samsung asks that judgment be entered

5   for it and that it be awarded attorneys' fees in defending against the Complaint, together with such

6   other and further relief the Court deems appropriate.

7                                    **I.  AFFIRMATIVE DEFENSES**

8              As and for its affirmative defenses, Samsung alleges as follows:

9                    **First Affirmative Defense – Failure to State a Claim**

10             75.     The Complaint fails to state a claim upon which relief can be granted

11  because Samsung has not performed any act or thing and is not proposing to perform any act or

12  thing in violation of any rights validly belonging to Plaintiff.

13                   **Second Affirmative Defense – Noninfringement**

14             76.     The '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446,

15  '5,020, '696, and '598 Patents are invalid and unenforceable as set forth herein.

16             77.     Samsung does not infringe and has not infringed, either directly or indirectly,

17  does not and has not contributed to infringement, and does not and has not induced the

18  infringement of any claim of the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295,

19  '1,446, '5,020, '696, or '598 Patents.

20                    **Third Affirmative Defense – Patent Invalidity**

21             78.     The '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446,

22  '5,020, '696, and '598 Patents are invalid for failure to meet the "Conditions for Patentability" of

23  35 U.S.C. §§ 102 and 103 because the alleged inventions thereof are taught by, suggested by,

24  and/or are obvious in view of, the prior art, and no claim of the '184, '097, '285, '051, '789, '897,

25  '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents can be validly construed to cover

26  any Samsung device, system or operating method related to DRAM memory.

27             79.     The '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446,

28  '5,020, '696, and '598 Patents are invalid for failure to meet the "Specification" requirements of 35

U.S.C. § 112 because the written specifications thereof do not describe the alleged inventions and the manner and process of making and using them in the form required by § 112, and no claim of the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents can be validly construed to cover any Samsung device, system or operating method related to DRAM memory.

**Fourth Affirmative Defense – Prosecution Laches**

80.     Rambus's claims for relief and prayer for damages are barred, in whole or in part, because the equitable doctrine of prosecution laches renders the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents unenforceable.

**Fifth Affirmative Defense – Unclean Hands**

81.     Rambus's claims for relief and prayer for damages are barred, in whole or in part, because the equitable doctrine of unclean hands renders the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents unenforceable.

**Sixth Affirmative Defense – Equitable Estoppel**

82.     Rambus's claims for relief and prayer for damages are barred, in whole or in part, because the doctrine of equitable estoppel renders the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents unenforceable.

**Seventh Affirmative Defense – Estoppel**

83.     Rambus is estopped by its conduct during the course of its membership in JEDEC from asserting, amongst others, any of the patents that originate from the 1990 Farmwald '898 application or the October, 1995 Ware '294 application, including but not limited to the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '5,020, '696, and '598 Patents against Samsung's SDRAM products, the facts and circumstances of which are set forth herein.

84.     JEDEC with its associated committees is and, at all time relevant herein, has been the engineering standardization body for solid-state products in the United States and is part of the larger Electronic Industries Alliance ("EIA"). JEDEC has 300 member companies and 1800 individual committee participants. Standards promulgated by JEDEC, particularly for memories, are the predominant standards world-wide.

85.     At all times relevant herein, the semiconductor industry relied on JEDEC to develop the memory interface standard(s) for DRAMs and other memories, which are used predominantly in successive generations of computers, including mainframe, workstation, desktop, and laptop computers as well as many other electronic devices.  JEDEC operated and continues to operate through committees populated by industry representatives with a background in the engineering and marketing requirements of the industry.  In choosing standards, proposals for inclusion in or changes to existing standards or standards under consideration would be made at JEDEC meetings by its members. In the intervals between meetings, members would invest time and resources evaluating these proposals for suitability.  Over a series of meetings, input from industry participants would be considered. Gradually, a consensus would tend to emerge on the specific set of features that best suited the then current requirements of the market by cost and performance measures.  JEDEC was always pushed to move the standard ahead at the pace desired by the market, and to promulgate new and evolving standards in advance of their actual need in the market.

86.     JEDEC has rules and procedures designed to guarantee that JEDEC (and its rules) is not used by its members for anticompetitive or illegal purposes. One specific kind of anticompetitive effect that JEDEC guards against its unintended inclusion in a JEDEC standard of patented elements or requirements. JEDEC does not prohibit standards that require the use of patented technology, but JEDEC does require that any decision to incorporate a patented element in a JEDEC standard be made with knowledge and full disclosure of the fact that a proposed standard includes or requires patented technology and any consequently required patent licenses that would be needed to implement the standard.  JEDEC's policy is neutral on incorporation of patented elements in a standard so long as:  (a) the standard setting committee has a full and fair opportunity to evaluate the existence of the patent or possible patent, and (b) the purported owner of the patent or possible patent is willing to license the patent royalty free or on reasonable and non-discriminatory terms.

87.     Recognizing that no written rule can be so clear and precise that someone cannot find a way to evade or subvert its intent, JEDEC's procedure relied on the good faith participation of its members.

88.     In 1992, Rambus joined JEDEC. Rambus became interested in joining JEDEC for two reasons. First, it provided Rambus with insight into the industry's efforts to develop a state-of-the-art open DRAM memory interface standard. Second, it presented Rambus with an opportunity to meet prospective customers and pitch RDRAM license agreements to those customers.

89.     Rambus joined JEDEC at the time when many JEDEC members were advocating the adoption of a synchronous memory interface for DRAMs in place of the then-dominant asynchronous (or "conventional") DRAM interface. JEDEC's work on synchronous DRAM interface technology was independent of any work by Rambus in this area.

90.     The first SDRAM standard was adopted in JEDEC in 1993.

91.     The current SDRAM products represent foreseeable extensions and improvements of the base SDRAM standard which were known to or anticipated by Rambus and other JEDEC members when the base SDRAM standard was adopted at JEDEC in 1993. Many of the features first required by the JEDEC DDR SRAM, DDR2 SDRAM, and/or GDDR3 SDRAM interface standards were first included or proposed for inclusion during JEDEC's consideration, while Rambus was a JEDEC member, of standards for SDRAM and for DRAMs that would follow SDRAMs in the market. Other features required by the JEDEC DDR SDRAM, DDR2 SDRAM, GDDR3, and/or related interface standards were originally included in and required by the JEDEC standards for SDRAM.

92.     As a result of its membership in JEDEC, Rambus agreed, both explicitly and implicitly, that it would abide by the rules governing JEDEC members. These rules, among other things, required JEDEC members, including Rambus, to disclose to other JEDEC members any patents, patent applications or intentions to file patents that might bear upon standards being considered by JEDEC committees.

93.     By participating as a JEDEC member, Rambus knew or should have known that Samsung would be reasonably induced to rely upon Rambus's promises and representations that it would disclose any patents, patent applications, or intentions to file patents that may bear upon standards being considered by JEDEC.

94.     Samsung reasonably relied upon Rambus's promises and representations and was induced to design many of its products in accordance with standards adopted by JEDEC.

95.     Rambus's infringement allegations arise, at least in part, as a result of Samsung implementing one or more SDRAM standards adopted by JEDEC, through the design, manufacture, and sale of memory products complying with the JEDEC standards for, among others, SDRAM components and/or modules. Samsung memory products complying with JEDEC standards are sometimes referred to herein as "JEDEC standard products."

96.     Samsung is informed and believes that Rambus never disclosed to other JEDEC committee members its intention to file any of the patents, or claims of the type or scope contained in patents that originated with the 1990 Farmwald '898 application, and/or the 1995 Ware '294 application, including, but not limited to the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '5,020, '696, and '598 Patents asserted herein against Samsung's SDRAM products or other products, thereby breaching its duties of disclosure and good faith toward JEDEC and the members of JEDEC and, specifically, Samsung.

97.     Rambus and Samsung, through a series of licenses and other ties, formed a valuable business alliance in which Samsung supplied products based on Rambus technologies to the marketplace. Dave Mooring, president of Rambus at the time, stated that "Samsung continues to be a very strong and valuable partner for Rambus." Rambus encouraged Samsung to develop products based on Rambus's patents. As a result, Samsung became a major supplier of Rambus products. The valuable business alliance between Rambus and Samsung allowed Rambus to market its company and products based on Rambus technology that could not have otherwise been done successfully without Samsung's assistance.

98.     Samsung reasonably relied on Rambus's assertions that Samsung was a valued business partner and was dealing with Samsung in good faith and with the intent to promote

the valuable business alliance between them.  As a result, Samsung was misled by Rambus into promoting Rambus technology in faithful adherence to the business alliance.  Samsung was further misled into believing that Rambus was dealing with Samsung honestly, in good faith, and was not secretly taking actions that would harm Samsung's business.  Moreover, each of the several contracts carried with them duties of good faith and fair dealing that further lead Samsung to believe that its business ally, Rambus, would not secretly work against Samsung's interests.

99.     As a direct and proximate result of Rambus's failure to perform its duties and Rambus's misrepresentations, Samsung has been damaged in that it has been required to pursue its legal remedies, including this suit, at great expense. Moreover, if Rambus is allowed to assert its patents in breach of its duties of disclosure and good faith to Samsung, and other JEDEC members and is successful, Samsung will be damaged in the amount sought by Rambus as license fees, which, as yet, is unknown.

**Eighth Affirmative Defense – Implied License**

100.     Because of its conduct during the course of its membership in JEDEC as outlined herein, Rambus's claims of infringement of any of the patents that originate from the 1990 Farmwald '898 application or the October, 1995 Ware '294 application, including but not limited to the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '5,020, '696, and '598 Patents against Samsung's SDRAM products, are barred by the doctrine of implied license.

101.     Because of its conduct in JEDEC and/or during the course of its business alliance with Samsung as outlined herein, Rambus's claims of infringement of any of the patents that originate from the 1990 Farmwald '898 application or the October, 1995 Ware '294 application, including but not limited to the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '5,020, '696, and '598 Patents against Samsung's SDRAM products, are barred by the doctrine of implied license.

**Ninth Affirmative Defense – Marking and Limitations**

102.     Rambus's claims for relief and prayer for damages are barred, in whole or in part, by 35 U.S.C. §§ 286 and 287.

1

**FIRST AMENDED COUNTERCLAIMS**

2    Defendant/Counterclaim Plaintiff Samsung Electronics Co., Ltd. ("SEC") brings

3    these counterclaims against Plaintiff/Counterclaim Defendant Rambus Inc. ("Rambus").

4    Defendant/ Counterclaim Plaintiff Samsung America Electronics, Inc., ("SEA") joins in certain

5    counterclaims as stated below.

6    103.    SEC is a corporation organized and existing under the laws of Korea, with a

7    principal place of business at 250, 2-Ka, Taepyung-Ro, Chung-Ku, Seoul, South Korea, 100-742.

8    SEA is a corporation organized and existing under the laws of New Jersey, with a principal place of

9    business at 105 Challenger Road, Ridgefield Park, New Jersey, 07660.

10    104.    Rambus is a corporation incorporated and existing under the laws of

11    Delaware. Rambus's principal place of business is at 4440 El Camino Real, Los Altos, California,

12    94022.

13

**JURISDICTION AND VENUE**

14    105.    This Court has subject matter jurisdiction over SEC's and SEA's patent

15    counterclaims, which arise under the patent laws of the United States pursuant to 28 U.S.C. §§

16    1331, 1338, 2201, and 2202. This Court has subject matter jurisdiction over SEC's and SEA's state

17    law claims pursuant to 28 U.S.C. §§ 1332 and 1337, as SEC is a foreign citizen, SEA is a citizen of

18    the State of New Jersey, Rambus is a citizen of the States of California and Delaware, and the

19    amount in controversy exceeds $75,000; further, some or all of these claims fall within the Court's

20    supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because some of these claims are so related

21    to the patent claims that they form part of the same case or controversy.

22    106.    This Court has personal jurisdiction over Rambus, at least because Rambus

23    filed its claims for patent infringement in this Court, in response to which these counterclaims are

24    filed.

25    107.    Venue is established in this judicial district pursuant to 28 U.S.C. §§ 1391

26    and 1400. Venue is additionally proper in this Court because Rambus has consented to the

27    propriety of venue in this Court by filing its claim for patent infringement in this Court, in response

28

to which these counterclaims are filed.  Further, Rambus is a resident of the State of California and is generally present here.

## **GENERAL ALLEGATIONS**

108.    On or about October 31, 2000, SEC and Rambus entered into an agreement entitled "SDR/DDR IC and SDR/DDR Memory Module Patent License Agreement Between Rambus Inc. and Samsung Electronics Co., Ltd." (the "SDR/DDR License").

109.    Rambus claims to be the owner by assignment of U.S. Patent No. 6,182,184 (the "'184 Patent"), which is entitled "Method of Operating a Memory Device Having a Variable Data Input Length," and which issued on January 30, 2001.

110.    Rambus claims to be the owner by assignment of U.S. Patent No. 6,260,097 (the "'097 Patent"), which is entitled "Method and Apparatus for Controlling a Synchronous Memory Device," and which issued on July 10, 2001.

111.    Rambus claims to be the owner by assignment of U.S. Patent No. 6,266,285 (the "'285 Patent"), which is entitled "Method of Operating a Memory Device Having Write Latency," and which issued on July 24, 2001.

112.    Rambus claims to be the owner by assignment of U.S. Patent No. 6,314,051 (the "'051 Patent"), which is entitled "Memory Device Having Write Latency," and which issued on November 6, 2001.

113.    Rambus claims to be the owner by assignment of U.S. Patent No. 6,493,789 (the "'789 Patent"), which is entitled "Memory Device Which Receives Write Masking and Automatic Precharge Information," and which issued on December 10, 2002.

114.    Rambus claims to be the owner by assignment of U.S. Patent No. 6,496,897 (the "'897 Patent"), which is entitled "Semiconductor Memory Device Which Receives Write Masking Information," and which issued on December 17, 2002.

115.    Rambus claims to be the owner by assignment of U.S. Patent No. 6,546,446 (the "'6,446 Patent"), which is entitled "Synchronous Memory Device Having Automatic Precharge," and which issued on April 8, 2003.

116. Rambus claims to be the owner by assignment of U.S. Patent No. 6,564,281 (the "'281 Patent"), which is entitled "Synchronous Memory Device Having Automatic Precharge," and which issued on May 13, 2003.

117. Rambus claims to be the owner by assignment of U.S. Patent No. 6,584,037 (the "'037 Patent"), which is entitled "Memory Device Which Samples Data After An Amount of Time Transpires," and which issued on June 24, 2003.

118. Rambus claims to be the owner by assignment of U.S. Patent No. 6,697,295 (the "'295 Patent"), which is entitled "Memory Device Having a Programmable Register," and which issued on February 24, 2004.

119. Rambus claims to be the owner by assignment of U.S. Patent No. 6,701,446 (the "'1,446 Patent"), which is entitled "Power Control System for Synchronous Memory Device," and which issued on March 2, 2004.

120. Rambus claims to be the owner by assignment of U.S. Patent No. 6,715,020 (the "'5,020 Patent"), which is entitled "Synchronous Integrated Circuit Device," and which issued on March 30, 2004.

121. Rambus claims to be the owner by assignment of U.S. Patent No. 6,751,696 (the "'696 Patent"), which is entitled "Memory Device Having a Programmable Register," and which issued on June 15, 2004.

122. Rambus claims to be the owner by assignment of U.S. Patent No. 6,807,598 (the "'598 Patent"), which is entitled "Integrated Circuit Device Having Double Data Rate Capability," and which issued on October 19, 2004.

123. Samsung and Rambus executed the SDR/DDR License to Rambus's patents that allegedly cover, among other things, specific aspects of SDRAM and DDR technologies, in 2000. The SDR/DDR License required Rambus to notify Samsung if another, later license included a lower effective royalty rate; and, further to adjust Samsung's rate to the lower effective rate. (Section 3.8). Further, the SDR/DDR License also required good faith negotiation of a renewal. (Section 8.5). Finally, there is a duty of good faith and fair dealing in the SDR/DDR License.

124.     The SDR/DDR License to Rambus's patents, executed between Samsung and Rambus, further evidenced what Samsung believed to be a valuable business alliance between Samsung and Rambus in which both parties shared common business objectives.

125.     Samsung's belief in Rambus's intentions towards Samsung to maintain a profitable business alliance was further bolstered by Rambus's assertions that Samsung was a valued business partner and was dealing with Samsung in good faith and with the intent to promote the valuable business alliance between them.   Samsung was further misled into believing that Rambus was dealing with Samsung honestly, in good faith, and was not secretly taking actions that would harm Samsung's business.

126.     Samsung, on the basis of its mutual understanding that Rambus and Samsung were valuable business partners in a profitable business alliance, did not suspect and could not have expected Rambus to behave in a way that would jeopardize that relationship nor that that its business ally, Rambus, would secretly work against Samsung's interests.

### Rambus's Aiding and Abetting Neil Steinberg's
### Breach of Fiduciary Duties Owed to Samsung, a Current Client

127.     Mr. Neil Steinberg was employed as an in-house attorney for SEC and its subsidiaries, through its SEA subsidiary, into August 1998.

128.     By February 1998, Rambus had secretly engaged Mr. Steinberg to actively work for it as an attorney, providing legal advice and strategies for the enforcement of legal claims, including patent claims against DRAM manufacturers, such as Samsung, notwithstanding the fact that Rambus knew Mr. Steinberg was employed as a full-time, in-house counsel for Samsung.   By June 1998, while still employed at Samsung, Mr. Steinberg had a Rambus e-mail account.

129.     As an in-house attorney for Samsung, Mr. Steinberg owed Samsung a fiduciary duty of utmost good faith and fair dealing and undivided loyalty and honesty in fact.

130.     Upon information and belief, at the request of Rambus, Mr. Steinberg actively worked to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs,

1   including Samsung.  Further, upon information and belief, Mr. Steinberg used information about

2   Samsung's business and DRAM products in working for Rambus while he was under contractual

3   and fiduciary duties not to disclose such information about Samsung's business or to use it contrary

4   to Samsung's interests, regardless of whether such information was trade secret.

5           131.    Rambus was aware that Mr. Steinberg was still employed as an attorney by

6   Samsung when Rambus engaged his services.  Rambus was further aware of the fiduciary capacity

7   in which Mr. Steinberg worked for Samsung, and of the duties that Mr. Steinberg owed to

8   Samsung.  Mr. Steinberg's duties to Samsung included an obligation to disclose violations of those

9   duties.

10          132.    Mr. Steinberg remained silent and concealed from Samsung his work for

11  Rambus in contravention of his on-going obligations with Samsung, including information about

12  his dual employment with Samsung and Rambus.

13          133.    Samsung relied on Mr. Steinberg faithfully fulfilling his duties owed to

14  Samsung, including the obligation to disclose violations of those duties.  Samsung further relied on

15  Mr. Steinberg's silence as indication that he did not violate his duties.

16          134.    Rambus was aware of Mr. Steinberg's failure to disclose his dual

17  employment to Samsung, in contravention of his duties to Samsung.  Nevertheless, Rambus

18  secretly engaged Mr. Steinberg's services when Rambus was aware that Mr. Steinberg was still

19  employed as an attorney by Samsung and facilitated Mr. Steinberg's silence on his dual

20  employment and, upon information and belief, his use of information about Samsung's business

21  and DRAM products in working for Rambus.

22          135.    Rambus knew or should have known that hiring Mr. Steinberg while he was

23  still employed by Samsung would be considered contrary to the purpose of maintaining a profitable

24  business alliance between Rambus and Samsung.  Nevertheless, Rambus concealed from Samsung

25  that it had secretly engaged Mr. Steinberg's services when Rambus was aware that he was still

26  employed as an attorney by Samsung and facilitated Mr. Steinberg's silence on his dual

27  employment and, upon information and belief, his use of information about Samsung's business

28  and DRAM products in working for Rambus.

136.     Rambus, by its concealment, falsely represented to Samsung that it was still interested in faithfully remaining a business partner with Samsung in their valuable business alliance.

137.     The existence of Mr. Steinberg's dual employment with Samsung and Rambus was publicly revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005, and could not have been discovered by Samsung before that time.

**Rambus's Aiding and Abetting Neil Steinberg's
Breach of Contractual Duties Owed to Samsung**

138.     During the Spring and Summer of 1998, Mr. Steinberg, in-house counsel for Samsung, had a written employment contract with Samsung for a specific term, which permitted Mr. Steinberg to work only for Samsung during the term of that contract unless Samsung gave him permission otherwise.   This contract also included specific obligations of nondisclosure and confidentiality, in addition to those imposed ethically and by law on Mr. Steinberg through his fiduciary capacity as an attorney.   Specifically, the contract prohibited Mr. Steinberg from disclosing "any processes, formulas, improvements, inventions, discoveries, trade secrets, or other proprietary information" to any person without Samsung's prior written consent.

139.     Rambus was aware that Mr. Steinberg was employed as in-house counsel for Samsung under a written employment contract for a specific term.   Rambus was further aware that at the time Mr. Steinberg's employment began with Rambus, his written employment contract had not been terminated and was still in effect.   Also during this time, Rambus knew that Mr. Steinberg's contract included nondisclosure clauses and restrictions on additional employment, and that Samsung had not consented to (and was unaware of) Mr. Steinberg's employment by Rambus.

140.     Nevertheless, contrary to Mr. Steinberg's express contract provisions with Samsung, Rambus employed Mr. Steinberg to perform work on behalf of Rambus.   Upon information and belief, at the request of Rambus, Mr. Steinberg actively worked to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take

other measures to extract royalties from manufacturers of DRAMs, including Samsung.  Further, upon information and belief, Mr. Steinberg used information about Samsung's business and DRAM products in working for Rambus while he was under contractual and fiduciary duties not to disclose such information about Samsung's business or use it contrary to Samsung's interests, regardless of whether such information was trade secret.  As a result, Rambus intentionally interfered with the Steinberg-Samsung employment contract by hiring Mr. Steinberg in February of 1998.

141.   Mr. Steinberg was obligated to disclose violations of his contractual duties to Samsung.

142.   Mr. Steinberg remained silent and concealed from Samsung his work for Rambus in contravention of his on-going obligations with Samsung, including the concealment of information about his dual employment with Samsung and Rambus.

143.   Samsung relied on Mr. Steinberg faithfully fulfilling his duties owed to Samsung, including the obligation to disclose violations of those duties.  Samsung further relied on Mr. Steinberg's silence as indication that he did not violate his duties.

144.   Rambus was aware that Mr. Steinberg's duties to Samsung included the obligation to disclose violations of those duties.  Nevertheless, Rambus secretly engaged Mr. Steinberg's services when Rambus was aware that Mr. Steinberg was still employed as an attorney by Samsung and facilitated Mr. Steinberg's silence on his dual employment and, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus.

145.   Rambus knew or should have known that its intentional interference with the Steinberg-Samsung employment contract would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung.  Nevertheless, Rambus concealed from Samsung that it had secretly interfered with the Steinberg-Samsung employment contract.

146.   Rambus, by its concealment, falsely represented to Samsung that it was still interested in faithfully remaining a business partner with Samsung in their valuable business alliance.

147. Rambus's intentional interference with Mr. Steinberg's contract with Samsung was publicly revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005 and could not have been discovered by Samsung before that time.

### Rambus's Aiding and Abetting Neil Steinberg's
### Breach of Fiduciary Duties Owed to Samsung, a Former Client

148. Mr. Steinberg ended his employment with Samsung in August 1998.

149. Separate from his duties when employed at Samsung, after ending his employment with Samsung, Mr. Steinberg owed Samsung those duties owed to a former client by a lawyer, including the duty to not disclose information about Samsung's business or to use it contrary to Samsung's interests, regardless of whether such information was trade secret, and the duty to obtain informed consent before representing parties adverse to Samsung in matters substantially related to those Mr. Steinberg worked on for Samsung.

150. Nevertheless, upon information and belief, Mr. Steinberg continued to actively work to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung. Further, upon information and belief, Mr. Steinberg used information about Samsung's business and DRAM products in working for Rambus while he was under contractual and fiduciary duties not to disclose such information about Samsung's business or to use it contrary to Samsung's interests, regardless of whether such information was trade secret.

151. Mr. Steinberg worked for Rambus without first obtaining Samsung's informed consent.

152. Mr. Steinberg remained silent and concealed from Samsung all the facts and circumstances regarding his representation of Rambus in contravention of his on-going obligations with Samsung, including, on information and belief, information about his active work to help Rambus plan patent prosecution strategies, including actually working on patent applications, patent enforcement strategies, document handling and retention strategies for use in litigation, and

to take other measures to extract royalties from manufacturers of DRAMs, including Samsung.  In addition, he failed to inform Samsung of, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus while he was under contractual and fiduciary duties not to disclose such information about Samsung's business or use it contrary to Samsung's interests, regardless of whether such information was trade secret.

153.    Rambus was aware that Mr. Steinberg was obligated to safeguard Samsung information and to obtain informed consent from Samsung before working on certain matters adverse to Samsung.  Rambus was further aware of the fiduciary capacity in which Mr. Steinberg had worked for Samsung, and of the duties that Mr. Steinberg continued to owe to Samsung.

154.    Mr. Steinberg was obligated to disclose violations of those duties to Samsung.

155.    Mr. Steinberg remained silent and concealed from Samsung his work for Rambus in contravention of his on-going obligations with Samsung.

156.    Samsung relied on Mr. Steinberg faithfully fulfilling his duties owed to Samsung, including the obligation to disclose violations of those duties.  Samsung further relied on Mr. Steinberg's silence as indication that he did not violate his duties.

157.    Rambus was aware that Mr. Steinberg's duties to Samsung included the obligation to disclose violations of those duties.  Nevertheless, with awareness of Mr. Steinberg's continuing fiduciary responsibilities to Samsung, Rambus secretly engaged Mr. Steinberg's services that, upon information and belief, made use of Samsung information and dealt with matters adverse to Samsung and facilitated Mr. Steinberg's silence on, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus.

158.    Rambus knew or should have known that allowing Mr. Steinberg to work on matters adverse to Samsung or that made use of Samsung information would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung.  Nevertheless, Rambus concealed from Samsung that it had secretly engaged Mr. Steinberg's services that, upon information and belief, made use of Samsung information and dealt with matters adverse to Samsung and facilitated Mr. Steinberg's silence on, upon information and

belief, his use of information about Samsung's business and DRAM products in working for Rambus.

159.    Rambus, by its concealment, falsely represented to Samsung that it was still interested in faithfully remaining a business partner with Samsung in their profitable business alliance.

160.    The full nature of Mr. Steinberg's employment with Rambus, including work done for Rambus that was adverse to Samsung's interests or that made use of information about Samsung's business, was publicly revealed for the first time during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005, and could not have been discovered by Samsung before that time.

## Rambus's Anticompetitive Patent Enforcement
## Strategies and Intentional Spoliation of Evidence

161.    Rambus was organized to exploit the invention claimed by Mark Horowitz and Michael Farmwald of a narrow, multiplexed bus, and a packet-based memory interface.

162.    In 1990, Rambus filed an application for a patent on the Horowitz-Farmwald claimed invention(s).  Rambus believed that this application fully and comprehensively described and claimed any and all inventions made by Horowitz and Farmwald.

163.    Rambus implemented the Horowitz-Farmwald ideas in a specific interface which it called Rambus DRAM, or "RDRAM."

164.    Rambus's original and preferred objective was to establish RDRAM as the commodity DRAM interface.

165.    To this end, Rambus began as early as 1991 to actively market RDRAM to the DRAM industry including DRAM manufacturers, PC enablers including Intel, and industrial DRAM users.

166.    From the beginning of its RDRAM marketing efforts, Rambus licensed and offered to license the whole of its interface technology, including any future patents.  Prospective licensees reasonably understood that they were bargaining for a license relating to any existing or future Rambus patents.

167.   In marketing RDRAM to the DRAM industry, Rambus described the Rambus interface extensively.  Such descriptions invariably emphasized the unique and allegedly "revolutionary" characteristics of the Horowitz-Farmwald ideas, namely the single narrow and multiplexed bus and the packet based communication protocol.

168.   In marketing RDRAM to the DRAM industry, Rambus frequently and typically contrasted RDRAM with competitive interfaces, including the conventional DRAM interfaces then in common use, and with developing DRAM interfaces, including the SDRAM interfaces being standardized at JEDEC and the SyncLink interface.

169.   During the 1990's, Rambus participated actively in industry meetings on standards for SDRAMs and DDR DRAMs at the Joint Electron Device Engineering Council ("JEDEC").  Rambus improperly used information it obtained as a result of its membership in JEDEC to secure additional patents and claims.  Rambus's use of this information was in violation of policies applicable to all JEDEC members.  Further, Rambus's failure to disclose to other members of JEDEC that it had taken information from JEDEC to craft its patent claims, only to seek to enforce its claims against JEDEC-compliant products many years after JEDEC members had invested heavily in the technology without notice of Rambus's conduct estops Rambus from enforcing its patents against JEDEC members.

170.   By February 1998, Rambus decided to litigate in order to license its purported SDRAM and DDR SDRAM technology to the DRAM industry, as a means of eliminating or disadvantaging such alternatives to Rambus technology.  By the Spring of 1998, before it commenced its litigation strategy, Rambus was actively seeking to improve its SDRAM and DDR SDRAM patent portfolio.

171.   Central to this litigation strategy was the repeated, company-wide, destruction of relevant documents.  Rambus intentionally destroyed millions of pages of documents that it knew would be relevant to its lawsuits against the users of competing PC DRAM interface technologies, including this lawsuit against Samsung and others.  This strategy also included recruiting Samsung employees to work for Rambus as employees or attorneys.

172.    During meetings held in February 1998, Rambus and its attorneys developed a multi-step litigation strategy against DRAM manufacturers that included making Rambus "battle ready" prior to litigation.   The strategy involved, among other things, destroying millions of relevant documents and attempting to mask that wanton destruction under the guise of a document "retention" policy.

173.    At the time this strategy was hatched, Rambus expressly contemplated suing DRAM manufacturers on a number of theories, including breach of contract against those manufacturers who were RDRAM licensees, patent infringement against those who relied on competing PC DRAM interface technology, and an action for collusion and/or unfair competition against the DRAM suppliers.

174.    Rambus's stated goals for the third quarter of 1998 included implementing its document destruction action plan.   This plan included a staff training event and a "summer housecleaning."

175.    In September 1998, Rambus commenced its first known "shred party." Rambus hired a shredding service to come to Rambus's corporate headquarters in Mountain View, California on September 3, 1998.   In accordance with Rambus's litigation strategy, Rambus distributed burlap bags to all of its employees a week in advance of the shredding to enable those employees to identify and collect documents to be shredded.   During this first shred party, Rambus began to "cleanse" its patent prosecution and related files by destroying documents related to, at least, patents that Rambus was planning to enforce against the DRAM industry.   The destroyed documents related to, among others, patents to which other Rambus patents claim priority, including patents that issued after the first shred party.   Following "Shred Day," all Rambus employees were invited to a party at 5:00 p.m. on September 3, 1998 to celebrate completion of the document destruction.

176.    All told, Rambus employees shredded thousands of pages of documents on Shred Day 1998.   In fact, so many documents were bagged for shredding that the shredding truck was filled to capacity and had to return another day to finish the job.   By the end of the shredding,

1    Rambus had disposed of over 185 burlap sacks full of documents, and 60 banker's boxes full of

2    documents.

3         177.   During April 1999, Rambus had its patent attorneys "cleanse" their files.

4         178.   In 1999, Rambus added further detail to its anticompetitive strategy.

5    Rambus's 1999 litigation strategy expressly anticipated and planned for a potential "Nuclear

6    Winter Scenario" in the event Intel was to decide to move away from RDRAM to an alternative

7    technology, such as DDR SDRAM, SLDRAM, or some other PC DRAM interface technology that

8    Rambus feared might have been created by the DRAM manufacturers.  Rambus's planned response

9    was to discipline Intel "by cutting off" Intel's access to alternative technology, thus "threatening

10   Intel's current and future microprocessor based products."

11        179.   As a central part of its litigation plan, Rambus contemplated filing

12   complaints against various DRAM manufacturers.  The claims Rambus expressly contemplated in

13   1999 included: (i) patent infringement claims against users of alternative technologies to RDRAM

14   technology; (ii) breach of contract claims "based on cancellation of RDRAM production;" (iii)

15   fraud based on a theory that the DRAM companies never intended to manufacture RDRAM, and

16   (iv) the making of statements about Rambus that the DRAM companies knew to be untrue; (v)

17   unfair competition; (vi) antitrust violations; and (vii) any other claims that might be brought based

18   on a theory that the DRAM manufacturers set out to destroy Rambus through their actions.  These

19   claims planned in 1999 include the very claims Rambus has alleged in its Complaint in this action.

20        180.   In furtherance of Rambus's "nuclear winter" litigation scenario, Rambus set

21   a series of "IP Goals" for 1999.  For the third quarter of 1999, the "Licensing/Litigation Readiness

22   Goals" included the following verbatim bullet-point items:

23             "E.    Prepare litigation strategy against 1 of 3 manufacturers (re: 3D)

24             "F.    Ready for Litigation with 30 days notice

25             "G.    Organize 1999 shredding party at Rambus"

26        181.   During August 1999, Rambus commenced its second known "shred party."

27   During this second shred party, Rambus again "cleansed" its patent prosecution and related files by

28   destroying additional documents related to, at least, patents that Rambus was planning to enforce or

was litigating against the DRAM industry.  The destroyed documents related to, among others, patents to which other Rambus patents claim priority, including patents that issued after the second shred party.  All told, an additional 150 burlap bags filled with documents were destroyed - the equivalent of 188 banker's boxes or almost a half-a-million pages.

182.    During the Spring of 2000, Rambus was notified by its outside counsel that it had a duty to preserve all documents related to its patents and/or the litigation against DRAM manufacturers.

183.    During June 2000 and after its litigation with Hitachi settled, Rambus again asked its patent attorneys to destroy documents.

184.    During December 2000, while Rambus was actively litigating against numerous companies on antitrust, fraud, and patent claims, Rambus commenced its third known "shred party."  During this third shred party, Rambus again "cleansed" its patent prosecution and related files by destroying additional documents related to, at least, patents that Rambus was enforcing and litigating against the DRAM industry.  The destroyed documents related to, among others, patents to which other Rambus patents claim priority, including patents that issued after the third shred party.  Shred Day 2000 turned out to be the largest Shred Day of them all.  All told, Rambus destroyed over 575 banker's boxes full of documents - one-and-a-half million pages - on Shred Day 2000.  Although Rambus was then litigating numerous actions, Rambus employees were given no instructions to retain documents related to the litigations.  To ensure that its strategy to dispose of critical evidence worked, Rambus did not maintain any record of which documents it destroyed.

185.    Samsung could not have discovered Rambus's destruction of documents until it was revealed publicly in a trial in *Rambus v. Infineon* in the Eastern District of Virginia in February 2005.

186.    Rambus's document destruction covered all major categories of documents generated in the ordinary course of Rambus's business, such as e-mail communications, notes of contract negotiations, and drafts and other *information* useful in ascertaining the truth and in testing

the validity of the positions taken by Rambus in this and its other lawsuits.  The shredding included the destruction of evidence that related to, among other things:

        a.      Rambus's prosecution of its patents,

        b.      the relationship of Rambus's patent applications and pending claims to industry standards,

        c.      presentations to Rambus's board of directors regarding intellectual property,

        d.      potentially damaging or invalidating prior art related to patents asserted against DRAM manufacturers, including Samsung, as part of Rambus's litigation strategy,

        e.      Rambus's draft license agreements and documents related to the negotiations for such license agreements, and

        f.      on information and belief; other documents supporting Samsung's positions and affirmative defenses in this case, and the facts alleged by Samsung in its Counterclaims.

        187.      Rambus's wholesale destruction of these and other categories of documents was intended to and has prejudiced Samsung in this lawsuit, as well as other DRAM manufacturers and the end-users of DRAM technology.

        188.      Rambus's vice president of engineering testified under oath that he was ordered to purge his files at least in part because "such materials are discoverable in subsequent litigations."  A lawyer in Rambus's in-house legal department testified that one of the understood reasons behind the "Shred Days" was that "some of that stuff is discoverable."

        189.      While attempting to make itself "battle ready," Rambus launched its litigation campaign against the DRAM manufacturers, with numerous patent suits against multiple DRAM manufacturers in various U.S. federal courts, as well as patent courts in Italy, German, France, and the United Kingdom.

        190.      In the course of its lawsuits against the DRAM manufacturers, it engaged in further litigation misconduct, including permitting its executives, attorneys and employees to offer false or misleading testimony in multiple depositions about Rambus's destruction of documents.  In one such action brought by Rambus against Infineon in the Eastern District of Virginia, the Honorable Robert Payne found Rambus's spoliation and perjury so egregious that he dismissed

1  summarily Rambus's claims against Infineon.  Having been presented with evidence of Rambus's

2  (and its lawyers') misconduct, Judge Payne could only remark "Why are all these people lying?"

3  Judge Payne felt compelled to warn all involved that their destruction of evidence could result in

4  jail terms.

5  191.   Rambus knew or should have known that its actions in implementing its

6  strategy to exploit its anticompetitive agreements and litigation scheme against the DRAM

7  manufacturers, including Samsung, would be considered contrary to the purpose of maintaining a

8  profitable business alliance between Rambus and Samsung.  Nevertheless, Rambus engaged in such

9  actions.

10  192.   Rambus, by its concealment, falsely represented to Samsung that it was still

11  interested in faithfully remaining a business partner with Samsung in their profitable business

12  alliance.

13  193.   Rambus's destruction of documents in anticipation of litigation with

14  Samsung, its unfair employment of Neil Steinberg, and the full nature and extent of the unfair

15  conduct by Rambus, were publicly revealed for the first time during the trial of *Rambus v. Infineon*,

16  in the U. S. District Court for the Eastern District of Virginia in 2005, and could not have been

17  discovered by Samsung before that time.

18  194.   Rambus continues today its strategy to exploit its anticompetitive agreements

19  and litigation scheme in an attempt to have "[o]ur standards dominate the DRAM interface market"

20  and "[c]ollect royalties on all DRAM and controllers forever."

21  **COUNT I (BREACH OF SECTION 3.8 OF THE SDR/DDR LICENSE)**

22  195.   SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and

23  103-194 above as though fully set forth herein.

24  196.   Section 3.8 of the SDR/DDR License requires Rambus to notify SEC of any

25  lower effective royalty rate paid by any third party for specific products defined in the SDR/DDR

26  License.

27  197.   Rambus and Infineon entered into a license agreement during the Spring of

28  2005 (the "Rambus/Infineon License").  On information and belief, the Rambus/Infineon License

provided for an effective royalty rate that was lower than that being paid by SEC under the SDR/DDR License.

198.   Rambus failed to notify SEC of the lower effective royalty rate agreed to be paid by Infineon as provided for in the Rambus/Infineon License.

199.   Rambus breached Section 3.8 of the SDR/DDR License Agreement by failing to notify SEC of the lower effective royalty rate provided for in the Rambus/Infineon License.

200.   Section 3.8 of the SDR/DDR License required Rambus to adjust the royalty rate paid by SEC to match any lower effective royalty rate paid by a third party.

201.   Rambus failed to adjust SEC's royalty rate following the execution of the Rambus/Infineon License.

202.   Rambus breached Section 3.8 of the SDR/DDR License Agreement by failing to adjust SEC's royalty rate based upon the lower effective royalty rate provided for in the Rambus/Infineon License.

203.   All conditions precedent have been met.

204.   SEC has suffered damages as a result of the breach by Rambus of Section 3.8 of the SDR/DDR License.

## COUNT II (BREACH OF SECTION 8.5 OF THE SDR/DDR LICENSE)

205.   SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and 103-194 above as though fully set forth herein.

206.   Section 8.5 of the SDR/DDR License provides that SEC and Rambus will negotiate an extension or renewal of the SDR/DDR License in good faith.

207.   Rambus failed to provide notice of certain terms of the Rambus/Infineon License as required under Section 3.8 of the SDR/DDR License, thereby precluding good faith negotiations for the extension or renewal of the SDR/DDR License.

208.   Rambus breached Section 8.5 of the SDR/DDR License by failing to provide SEC with notice of those certain terms of the Rambus/Infineon License as required under Section

1  3.8 of the SDR/DDR License. By withholding notice of the terms, Rambus did not and could not

2  negotiate a new license agreement with SEC in good faith.

3      209.   All conditions precedent have been met.

4      210.   SEC has suffered damages as a result of the breach by Rambus of Section 8.5

5  of the SDR/DDR License.

6  **COUNT III (BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING**
   **OF SECTIONS 3.8 AND 8.5 OF THE SDR/DDR LICENSE)**

7

8      211.   SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and

9  103-194 above as though fully set forth herein.

10     212.   Under Section 9.1, the SDR/DDR License is to be governed by, and

11  interpreted in accordance with, U.S. federal law and California law.

12     213.   Under California law, Section 3.8 of the SDR/DDR License includes a duty

13  of good faith and fair dealing owed by Rambus to SEC to inform SEC of the lower royalty rate

14  provided for in the Rambus/Infineon License and to adjust Samsung's rate to the lower rate.

15     214.   Rambus failed to inform SEC of the lower effective royalty rate provided for

16  in the Rambus/Infineon License.

17     215.   Rambus breached the duty of good faith and fair dealing of the SDR/DDR

18  License by failing to inform SEC of the lower effective royalty rate provided for in the

19  Rambus/Infineon License.

20     216.   Under California law, the duty of good faith and fair dealing required

21  Rambus to adjust the royalty rate paid by SEC to match any lower effective royalty rate paid by a

22  third party.

23     217.   Rambus failed to adjust the royalty rate paid by SEC to match the lower

24  effective royalty rate provided for in the Rambus/Infineon License.

25     218.   Rambus breached the duty of good faith and fair dealing by failing to adjust

26  the royalty rate paid by SEC to match the lower effective royalty rate provided for in the

27  Rambus/Infineon License.

28

219.    Under California law, Section 8.5 of the SDR/DDR License includes a duty owed by Rambus to SEC to negotiate an extension or renewal of the SDR/DDR License in good faith.

220.    Rambus failed to provide notice of the terms of the Rambus/Infineon License to SEC, thereby precluding good faith negotiations for the extension or renewal of the SDR/DDR License.

221.    Rambus breached the duty of good faith and fair dealing of the SDR/DDR License by failing to provide notice of the terms of the Rambus/Infineon License to SEC.  By withholding notice of the terms, Rambus did not and could not negotiate a new license agreement with SEC in good faith.

222.    All conditions precedent have been met.

223.    SEC has suffered damages as a result of the breach of the duty of good faith and fair dealing by Rambus of the SDR/DDR License.

## COUNT IV (AIDING AND ABETTING BREACH OF FIDUCIARY DUTY TO A CURRENT CLIENT)

224.    SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and 103-194 above as though fully set forth herein.

225.    As an in-house attorney for Samsung, Mr. Steinberg owed Samsung a fiduciary duty of utmost good faith and fair dealing and undivided loyalty and honesty in fact.

226.    By actively working for Rambus in secret and in opposition to Samsung's interests during the time he was employed as an attorney for Samsung, Mr. Steinberg breached his fiduciary duty to Samsung.

227.    While an employee for Samsung, Mr. Steinberg concealed his dual representation of Samsung and Rambus and represented to Samsung that he was not working for both Rambus and Samsung at the same time.  Thus, Samsung had no notice of any deception on Mr. Steinberg's part and had no reason to investigate whether Mr. Steinberg worked for Rambus while employed as an attorney by Samsung.

228. Mr. Steinberg's failure to disclose his breach of his fiduciary duty to Samsung further violated his fiduciary duty toward Samsung.

229. Samsung was entitled to reasonably rely on Mr. Steinberg's silence because of its expectation that Mr. Steinberg would faithfully fulfill his fiduciary obligations.

230. Because Samsung was misled by Mr. Steinberg's misrepresentation and concealment of facts surrounding his dual employment by Samsung and Rambus, it did not discover, nor was it put on notice to investigate, Mr. Steinberg's breach of fiduciary duties he owed to Samsung as a current client.

231. Rambus knew that Mr. Steinberg was still employed as an attorney by Samsung when it engaged his services. It further knew that Samsung had not given permission for Mr. Steinberg to dually represent Samsung and Rambus. Rambus also knew of the fiduciary capacity in which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg owed to Samsung as a result.

232. By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary duties to Samsung as a current client, Rambus aided and abetted Mr. Steinberg in breaching those fiduciary duties.

233. Rambus also knew that Mr. Steinberg had a duty to disclose to Samsung, a current client, of any breach of his fiduciary duty, and that Mr. Steinberg in fact failed to carry out this duty . As a result, Rambus facilitated Mr. Steinberg's failure of his obligation to Samsung by secretly engaging Mr. Steinberg's services when it was aware that Mr. Steinberg was still employed as an attorney by Samsung.

234. Rambus knew that hiring Mr. Steinberg while he was still employed by Samsung would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung. Nevertheless, Rambus concealed from Samsung that it had secretly engaged Mr. Steinberg's services when Rambus was aware that Mr. Steinberg was still employed as an attorney by Samsung and facilitated Mr. Steinberg's silence on his dual employment and, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus.

1    235.    Rambus, by its concealment, falsely represented to Samsung that it was still

2    interested in faithfully remaining a business partner with Samsung in their profitable business

3    alliance.

4    236.    SEC and SEA were harmed by Rambus's aiding and abetting Mr.

5    Steinberg's breach of his fiduciary duty to Samsung.

6    **Applicable Statute of Limitations Tolled by Discovery Rule**

7    237.    As a result of Mr. Steinberg's and/or Rambus's concealment of his dual

8    representation of Samsung and Rambus, Samsung did not discover and could not have discovered

9    the circumstances giving rise to a breach of Mr. Steinberg's fiduciary duties owed to Samsung

10   while working for them, nor of Rambus's role in Mr. Steinberg's breach of his fiduciary duties,

11   until it was revealed for the first time during the trial of *Rambus v. Infineon*, in the U. S. District

12   Court for the Eastern District of Virginia in 2005.  Once Rambus's employment of Neil Steinberg

13   while an employee of Samsung was revealed to Samsung, Samsung was able to diligently

14   investigate and pursue its claims against Rambus based on such conduct.

15   **Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling**

16   238.    Furthermore, Mr. Steinberg's misrepresentations to Samsung while working

17   for Samsung helped conceal material facts that prevented Samsung from knowing or discovering

18   the nature and extent of the injury suffered due to Mr. Steinberg's dual representation.   Mr.

19   Steinberg's concealment of his dual representation when he was under a duty to disclose those facts

20   prevented Samsung from discovering that a breach of Mr. Steinberg's fiduciary duty had occurred,

21   as Samsung was not otherwise on notice that Mr. Steinberg had breached his fiduciary duty by his

22   dual representation of Samsung and Rambus.

23   239.    Rambus's concealment of its hiring of Mr. Steinberg while he was still an

24   employee of Samsung and its affirmative misrepresentations to Samsung that it was still a faithful

25   business partner to Samsung also helped conceal material facts that prevented Samsung from

26   knowing or discovering the nature and extent of the injury suffered due to Mr. Steinberg's dual

27   representation.   Rambus's concealment of his dual representation prevented Samsung from

28   discovering that a breach of Mr. Steinberg's fiduciary duty had occurred, as Samsung was not

1   otherwise on notice that Mr. Steinberg had breached his fiduciary duty by his dual representation of

2   Samsung and Rambus.

3            240.    As a result, the misrepresentation and nondisclosure practiced by Mr.

4   Steinberg and Rambus on Samsung, and the role Rambus played in Mr. Steinberg's

5   misrepresentation and nondisclosure, was not discovered until Mr. Steinberg's dual employment

6   was revealed for the first time during the trial of *Rambus v. Infineon*, in the U. S. District Court for

7   the Eastern District of Virginia in 2005.  Once Rambus's employment of Neil Steinberg was

8   discovered by Samsung in 2005, Samsung was able to diligently investigate and pursue its claims

9   against Rambus based on such conduct.

10  **COUNT V (AIDING AND ABETTING BREACH OF FIDUCIARY DUTY TO A FORMER**

11                                                  **CLIENT)**

12           241.    SEC and SEA reallege and incorporate by reference Paragraphs 1-28 and

13  103-194 above as though fully set forth herein.

14           242.    As a former in-house attorney for Samsung, Mr. Steinberg owed Samsung

15  those duties due to a former client, including the duty to not disclose information about Samsung's

16  business or to use it contrary to Samsung's interests, regardless of whether such information was

17  trade secret, and the duty to obtain informed consent before representing parties adverse to

18  Samsung in matters substantially related to those Mr. Steinberg worked on for Samsung.

19           243.    Despite these obligations to Samsung, Mr. Steinberg, upon information and

20  belief, actively worked to help Rambus plan patent prosecution strategies, including actually

21  working on patent applications, patent enforcement strategies, document handling and retention

22  strategies for use in litigation, and to take other measures to extract royalties from manufacturers of

23  DRAMs, including Samsung.  Mr. Steinberg did this without first obtaining informed consent from

24  Samsung.  Upon information and belief, Mr. Steinberg also used information about Samsung's

25  business and DRAM products while working for Rambus at a time he was under a duty not to

26  disclose such information about Samsung's business or to use it contrary to Samsung's interests,

27  regardless of whether such information was trade secret.

28

244.    Mr. Steinberg further violated his fiduciary duty to Samsung by failing to disclose to Samsung his work for Rambus that was contrary to Samsung's interests or his use of information obtained while an attorney for Samsung.

245.    Mr. Steinberg concealed from Samsung his work for Rambus that was adverse to Samsung and made use of Samsung information.  Samsung, therefore, had no notice of any deception on Mr. Steinberg's part and therefore had no reason to investigate whether Mr. Steinberg's work for Rambus was adverse to Samsung or made use of Samsung information.

246.    Samsung was entitled to reasonably rely on Mr. Steinberg's silence because of its expectation that Mr. Steinberg would obtain informed consent before working on matters adverse to Samsung and would faithfully safeguard Samsung's information.

247.    Because Samsung was misled by Mr. Steinberg's misrepresentation and concealment of facts regarding the full nature of the work he performed for Rambus, it did not discover, nor was it put on notice to investigate, Mr. Steinberg's breach of fiduciary duties he owed to Samsung as a former client.

248.    Rambus knew that Mr. Steinberg was employed as an attorney by Samsung. It further knew that Samsung had not given permission for Mr. Steinberg to work on matters adverse to Samsung or to disclose Samsung information.  Rambus also knew of the fiduciary capacity in which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg continued to owe Samsung as a result of his former representation.

249.    By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary duties to Samsung as a former client, Rambus aided and abetted Mr. Steinberg in breaching those fiduciary duties.

250.    Rambus also knew that Mr. Steinberg had a duty to disclose to Samsung, a former client, of any breach of his fiduciary duty, and that Mr. Steinberg in fact failed to carry out this duty .  As a result, Rambus facilitated Mr. Steinberg's failure of his obligation to Samsung by secretly engaging Mr. Steinberg's services for matters adverse to Samsung and that made use of confidential Samsung information.

251.   Rambus knew that using Mr. Steinberg's services on matters adverse to Samsung or that made use of Samsung information would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung.   Nevertheless, Rambus concealed from Samsung that it had secretly engaged Mr. Steinberg's services on matters adverse to Samsung or that, on information and belief, made use of Samsung information and facilitated Mr. Steinberg's silence on his work for Rambus on matters adverse to Samsung and, upon information and belief, his use of information about Samsung's business and DRAM products in working for Rambus.

252.   Rambus, by its concealment, falsely represented to Samsung that it was still interested in faithfully remaining a business partner with Samsung in their profitable business alliance.

253.   SEC and SEA were harmed by Rambus's aiding and abetting Mr. Steinberg's breach of his fiduciary duty to Samsung.

### Applicable Statute of Limitations Tolled by Discovery Rule

254.   As a result of Mr. Steinberg's and/or Rambus's failure to disclose the full nature of his work for Rambus in violation of his continuing obligations to Samsung, Samsung did not discover and could not have discovered the circumstances giving rise to a breach of Mr. Steinberg's fiduciary duties owed to Samsung as a former client, nor of Rambus's role in Mr. Steinberg's breach of his fiduciary duties, until it was revealed for the first time during the trial of *Rambus v. Infineon*, in the U. S. District Court for the Eastern District of Virginia in 2005.   Once the full scope of Rambus's employment of Mr. Steinberg was revealed to Samsung, Samsung was able to diligently investigate and pursue its claims against Rambus based on such conduct.

### Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling

255.   Furthermore, Mr. Steinberg's misrepresentations to Samsung helped conceal material facts that prevented Samsung from knowing or discovering the nature and extent of the injury suffered due to Mr. Steinberg's employment by Rambus.  Mr. Steinberg's failure to disclose the nature of his employment by Rambus when he was under a duty to do so prevented Samsung from discovering that a breach of Mr. Steinberg's fiduciary duty had occurred, as Samsung was not

1  otherwise under notice that Mr. Steinberg had breached his fiduciary duty by working for Rambus

2  on matters adverse to Samsung or that made use of Samsung information.

3  256.  Rambus's concealment of its use of Mr. Steinberg's services on matters

4  adverse to Samsung or that, upon information and belief, made use of Samsung information and its

5  affirmative misrepresentations to Samsung that it was still a faithful business partner to Samsung

6  also helped conceal material facts that prevented Samsung from knowing or discovering the nature

7  and extent of the injury suffered due to Mr. Steinberg's work for Rambus.  Rambus's concealment

8  of his work for it prevented Samsung from discovering that a breach of Mr. Steinberg's fiduciary

9  duty had occurred, as Samsung was not otherwise on notice that Mr. Steinberg had breached his

10  fiduciary duty by his work for Rambus.

11  257.  As a result, the misrepresentation and nondisclosure practiced by Mr.

12  Steinberg and Rambus on Samsung, and the role Rambus played in Mr. Steinberg's

13  misrepresentation and nondisclosure, was not revealed until the full scope of Mr. Steinberg's

14  employment for Rambus was revealed for the first time during the trial of *Rambus v. Infineon*, in

15  the U. S. District Court for the Eastern District of Virginia in 2005.  Once the full scope of

16  Rambus's employment of Neil Steinberg was discovered in 2005, Samsung was able to diligently

17  investigate and pursue its claims against Rambus based on such conduct.

18  **COUNT VI (INTENTIONAL INTERFERENCE WITH CONTRACT)**

19  258.  SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and

20  103-194 above as though fully restated herein.

21  259.  Rambus was aware that Mr. Steinberg was employed as in-house counsel for

22  Samsung and under a written employment contract for a specific term.  Rambus was further aware

23  that at the time Mr. Steinberg's employment began with Rambus, his written employment contract

24  had not been terminated and was still in effect.  Also during this time, Rambus knew that Mr.

25  Steinberg's contract included nondisclosure clauses and restrictions on additional employment.

26  260.  Despite these contractual duties, Mr. Steinberg, upon information and belief,

27  actively worked to help Rambus plan patent prosecution strategies, including actually working on

28  patent applications, patent enforcement strategies, document handling and retention strategies for

use in litigation, and to take other measures to extract royalties from manufacturers of DRAMs, including Samsung.  Upon information and belief, while employed at Samsung, Mr. Steinberg also used information about Samsung's business and DRAM products in connection with his work for Rambus, despite the fact that he was under contractual and fiduciary duties not to disclose such information about Samsung's business or use it contrary to Samsung's interests, regardless of whether such information was trade secret.  Mr. Steinberg's work for Rambus, therefore, was in breach of his employment contract with Rambus.

261.    Because Rambus knew of Mr. Steinberg's employment contract and his subsequent breach of that contract by performing services on behalf of Rambus, Rambus intentionally interfered with the Steinberg-Samsung employment contract when it hired Mr. Steinberg in February of 1998.

262.    Mr. Steinberg further violated his contractual duty to Samsung by failing to disclose the full nature and duration of his work for Rambus.

263.    Mr. Steinberg and Rambus concealed from Samsung Mr. Steinberg's work for Rambus that was contrary to Samsung's interests and that made use of Samsung information. Samsung had no notice of any breach of the employment contract by Mr. Steinberg's and therefore did not discover and had no reason to investigate whether Mr. Steinberg worked for Rambus while employed as an attorney by Samsung or was working for Rambus contrary to Samsung's interests and with Samsung information.

264.    Samsung was entitled to reasonably rely on Mr. Steinberg's silence regarding Rambus's interference with his employment contract with Samsung because of its expectation that Mr. Steinberg would faithfully fulfill both his fiduciary and contractual obligations.

265.    Because Samsung was misled by Mr. Steinberg's misrepresentation and concealment of facts regarding the full nature of the work he performed for Rambus as well as the time period during which he worked for Rambus, it did not discover, nor was it put on notice to investigate, Mr. Steinberg's breach of contractual and fiduciary duties he owed to Samsung.

266.    Rambus knew of Mr. Steinberg's contractual obligations to Samsung, including his obligations to disclose the full nature and duration of his employment by Rambus.  By

1  secretly engaging Mr. Steinberg's services in contravention of these duties, therefore, Rambus

2  intentionally interfered with Mr. Steinberg's employment contract with Samsung and facilitated

3  Mr. Steinberg's violation of those duties.

4        267. Rambus knew or should have known that the nature and duration of Mr.

5  Steinberg's employment by Rambus would be considered contrary to the purpose of maintaining a

6  profitable business alliance between Rambus and Samsung. Nevertheless, Rambus concealed from

7  Samsung that it had secretly engaged Mr. Steinberg's services and facilitated Mr. Steinberg's

8  silence on the full nature and duration of his work for Rambus.

9        268. Rambus, by its concealment, falsely represented to Samsung that it was still

10  interested in faithfully remaining a business partner with Samsung in their profitable business

11  alliance.

12        269. SEC and SEA were harmed by Rambus's intentional interference with Mr.

13  Steinberg's employment contract.

14      **Applicable Statute of Limitations Tolled by Discovery Rule**

15        270. As a result of the concealment of Mr. Steinberg's dual representation and of

16  the full nature of the work he performed for Rambus, Samsung did not discover and could not have

17  discovered the circumstances giving rise to Rambus's interference of Mr. Steinberg's employment

18  contract with Samsung until it was revealed for the first time during the trial of *Rambus v. Infineon*,

19  in the U. S. District Court for the Eastern District of Virginia in 2005. Once the full nature and

20  duration of Rambus's employment of Mr. Steinberg was revealed to Samsung, Samsung was able

21  to diligently investigate and pursue its claims against Rambus based on such conduct.

22    **Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling**

23        271. Furthermore, Mr. Steinberg's false representations to Samsung helped

24  conceal material facts that prevented Samsung from knowing or discovering the nature and extent

25  of the injury suffered due to Mr. Steinberg's employment by Rambus. Mr. Steinberg's

26  concealment of the nature and duration of his employment by Rambus when he was under a duty to

27  do so prevented Samsung from determining that Rambus had intentionally interfered with Mr.

28  Steinberg's employment contract with Samsung, as Samsung was not otherwise under notice that

1   Mr. Steinberg had breached his employment contract by working for Rambus while employed by

2   Samsung and also by working for Rambus on matters adverse to Samsung or that made use of

3   Samsung information.

4       272.    Rambus's concealment of the full nature and duration of Mr. Steinberg's

5   employment by Rambus and its affirmative misrepresentations to Samsung that it was still a

6   faithful business partner to Samsung also helped conceal material facts that prevented Samsung

7   from knowing or discovering the nature and extent of the injury suffered due to Mr. Steinberg's

8   work for Rambus.  Rambus's concealment of his work for it prevented Samsung from discovering

9   that a breach of Mr. Steinberg's fiduciary duty had occurred, as Samsung was not otherwise on

10  notice that Mr. Steinberg had breached his fiduciary duty by his work for Rambus.

11      273.    As a result, the misrepresentation and nondisclosure practiced by Mr.

12  Steinberg and Rambus on Samsung was not disclosed until the full scope and duration of Mr.

13  Steinberg's employment for Rambus was revealed for the first time during the trial of *Rambus v.*

14  *Infineon*, in the U. S. District Court for the Eastern District of Virginia in 2005.  Once the full scope

15  and duration of Rambus's employment of Neil Steinberg was disclosed to Samsung in 2005,

16  Samsung was able to diligently investigate and pursue its claims against Rambus based on such

17  conduct.

18  **COUNT VII (VIOLATION OF CALIFORNIA BUS. & PROF. CODE SECTION 17,200)**

19      274.    SEC and SEA reallege and incorporate by reference Paragraphs 1-28 and

20  103-194 above as though fully restated herein.

21      275.    The herein-described conduct of Rambus, including its hiring of Mr.

22  Steinberg while still employed at Samsung, the "shred parties," and the persistent pursuit of patent

23  claims beyond its original disclosures is an unlawful business practice and constitutes unfair and

24  anticompetitive conduct toward Samsung, the DRAM industry, and the consuming public, in

25  violation of California Business and Professions Code § 17200 *et. seq.*

26      276.    Rambus has engaged in at least the following unlawful, unfair, and

27  anticompetitive business practices, and deceptive conduct:

28

276.1   Misdemeanor spoliation of evidence in violation of California Penal Code § 135 as evident by the following facts:   Rambus willfully destroyed or concealed documentary evidence to be produced in litigation against DRAM manufacturers with the intent to prevent it from being produced, as fully described herein;

276.2   Aiding and abetting the breach of fiduciary duty to a current client as evidenced by the following facts:   Rambus knew that Mr. Steinberg was still employed as an attorney by Samsung when it engaged his services.   It further knew that Samsung had not given permission for Mr. Steinberg to dually represent Samsung and Rambus.   Rambus also knew of the fiduciary capacity in which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg owed to Samsung as a result.   By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary duties to Samsung as a current client, therefore, Rambus aided and abetted Mr. Steinberg in breaching those fiduciary duties, as fully described herein.

276.3   Aiding and abetting the breach of fiduciary duty to a former client as evidenced by the following facts:   Rambus knew that Mr. Steinberg was employed as an attorney by Samsung.   It further knew that Samsung had not given permission for Mr. Steinberg to work on matters adverse to Samsung or to disclose Samsung information.   Rambus also knew of the fiduciary capacity in which Mr. Steinberg worked for Samsung and the duties that Mr. Steinberg continued to owe Samsung as a result of his former representation.   By engaging Mr. Steinberg to represent Rambus knowing Mr. Steinberg owed fiduciary duties to Samsung as a former client, therefore, Rambus aided and abetted Mr. Steinberg in breaching those fiduciary duties as fully described herein.

276.4   Intentional interference with contract as evidenced by the following facts:   Rambus knew of Mr. Steinberg's contractual obligations to Samsung, including his obligations to disclose the full nature and duration of his employment by Rambus.   By secretly engaging Mr. Steinberg's services in contravention of these duties, therefore, Rambus intentionally interfered with Mr. Steinberg's employment contract with Samsung and  facilitated Mr. Steinberg's violation of those duties as fully described in herein.

276.5   Unfair and anticompetitive business practices against DRAM manufacturers as a member of JEDEC as evidenced by the following facts: During the 1990's, Rambus participated actively in industry meetings on standards for SDRAMs and DDR DRAMs at the Joint Electron Device Engineering Council ("JEDEC").   Rambus improperly used information it obtained as a result of its membership in JEDEC to secure additional patents and claims.   Rambus's use of this information was in violation of policies applicable to all JEDEC members.   Rambus failure to disclose to other members of JEDEC that it had taken information from JEDEC to craft its patent claims, only to seek to enforce its claims against JEDEC-compliant products many years after JEDEC members had invested heavily in the technology without notice of Rambus's conduct. This conduct was unfair and anticompetitive to all DRAM manufacturers that were members of JEDEC, including Samsung.

277.   As a result of Rambus's unfair, unlawful, and anticompetitive conduct, SEC and SEA, as well as the consuming public, have been damaged.   Such injuries to SEC and SEA include, but are not limited to, the loss of money and property in the form of attorneys' fees paid to protect and assert SEC's and SEA's right against such unfair conduct, and lost revenues, profits, and market share.

278.   Samsung and the public at large, including manufacturers and end-users of DRAM and DDR technology, will continue to sustain injury and damages from this unfair conduct by Rambus unless Rambus is enjoined from continuing its unlawful conduct.   Samsung is entitled to recover reasonable attorneys' fees and costs in connection with this Count, as well as all appropriate restitution and other equitable relief.

279.   Rambus knew or should have known that its actions in engaging in unlawful and unfair business practices, and deceptive conduct would be considered contrary to the purpose of maintaining a profitable business alliance between Rambus and Samsung.   Nevertheless, Rambus concealed from Samsung that it had secretly engaged in unlawful and unfair business practices, and deceptive conduct.

280.     Rambus, by its concealment, falsely represented to Samsung that it was still interested in faithfully remaining a business partner with Samsung in their profitable business alliance.

### Applicable Statute of Limitations Tolled by Discovery Rule

281.     Samsung did not discover and could not have discovered Rambus's destruction of documents in anticipation of litigation with Samsung, its unfair employment of Neil Steinberg, or the full nature and extent of the unfair and anticompetitive conduct by Rambus until the actions of Rambus and Mr. Steinberg were revealed publicly in a trial in *Rambus v. Infineon*, in the U. S. District Court for the Eastern District of Virginia in 2005.  Once Rambus's unfair conduct was revealed to Samsung, Samsung was able to diligently investigate and pursue any potential claims against Rambus.

### Applicable Statute of Limitations Tolled by Doctrine of Equitable Tolling

282.     Furthermore, the concealment of their actions by Mr. Steinberg and Rambus prevented Samsung from knowing the full nature and extent of the injury suffered by Samsung due to Rambus's unfair and anticompetitive conduct.

283.     Rambus's concealment of its hiring of Mr. Steinberg while he was still an employee of Samsung and its affirmative misrepresentations to Samsung that it was still a faithful business partner to Samsung also helped conceal material facts that prevented Samsung from knowing or discovering the nature and extent of the injury suffered due to Rambus's unlawful, unfair, and anticompetitive conduct.

284.     As a result, Samsung was not aware of the full nature and extent of the unfair and anticompetitive conduct by Rambus until the actions of Rambus and Mr. Steinberg were revealed during the trial of *Rambus v. Infineon*, in the U.S. District Court for the Eastern District of Virginia in 2005.  Once Rambus's unfair conduct was disclosed, Samsung was able to diligently investigate and pursue any potential claims against Rambus.

### COUNT VIII (DECLARATORY JUDGMENT OF NONINFRINGEMENT)

285.     SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and 103-194 above as though fully set forth herein.

286.    An actual and justiciable controversy exists between SEC, SEA and Rambus with respect to the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents because Rambus has brought this action against Samsung alleging that Samsung infringes the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents.  Absent a declaration of noninfringement, invalidity, and unenforceability, Rambus will continue to wrongfully assert the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents against Samsung, and thereby cause SEC and SEA irreparable injury and damage.

287.    SEC and SEA have not infringed the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents, either directly or indirectly, literally or under the doctrine of equivalents, willfully, or otherwise, and SEC and SEA are entitled to a declaration to that effect.

## COUNT IX (DECLARATORY JUDGMENT OF INVALIDITY)

288.    SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and 103-194 above as though fully set forth herein.

289.    An actual and justiciable controversy exists between SEC, SEA and Rambus with respect to the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents because Rambus has brought this action against Samsung alleging that Samsung infringes the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents.  Absent a declaration of noninfringement, invalidity, and unenforceability, Rambus will continue to wrongfully assert the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents against Samsung, and thereby cause SEC and SEA irreparable injury and damage.

290.    The '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents are invalid for failure to meet the "Conditions for Patentability" of 35 U.S.C. §§ 102 and 103 because the alleged inventions thereof are taught by, suggested by, and/or are obvious in view of, the prior art, and no claim of the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents can be validly construed to cover

1   any Samsung device, system or operating method related to DRAM memory.  Samsung is entitled

2   to a declaration to that effect.

3       291.   The '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446,

4   '5,020, '696, and '598 Patents are invalid for failure to meet the "Specification" requirements of 35

5   U.S.C. § 112 because the written specifications thereof do not describe the alleged inventions and

6   the manner and process of making and using them in the form required by § 112, and no claim of

7   the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598

8   Patents can be validly construed to cover any Samsung device, system or operating method related

9   to DRAM memory. Samsung is entitled to a declaration to that effect.

10   **COUNT X (DECLARATORY JUDGMENT OF UNENFORCEABILITY)**

11       292.   SEC and SEA reallege and incorporate by reference Paragraphs 1-38 and

12   103-194 above as though fully set forth herein.

13       293.   An actual and justiciable controversy exists between SEC, SEA and Rambus

14   with respect to the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696,

15   and '598 Patents because Rambus has brought this action against Samsung alleging that Samsung

16   infringes the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and

17   '598 Patents.  Absent a declaration of noninfringement, invalidity, and unenforceability, Rambus

18   will continue to wrongfully assert the '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295,

19   '1,446, '5,020, '696, and '598 Patents against Samsung, and thereby cause SEC and SEA

20   irreparable injury and damage.

21       294.   The '184, '097, '285, '051, '789, '897, '6,446, '281, '037, '295, '1,446,

22   '5,020, '696, and '598 Patents are unenforceable under the provisions of Title 35, United States

23   Code and the equitable doctrines of prosecution laches, unclean hands, and estoppel, and SEC and

24   SEA are entitled to a declaration to that effect.

25       295.   Rambus unfairly and inequitably filed multiple continuation applications

26   over a long period of time.  Because Rambus failed to timely prosecute the '184, '097, '285, '051,

27   '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents, the '184, '097, '285,

28

'051, '789, '897, '6,446, '281, '037, '295, '1,446, '5,020, '696, and '598 Patents are unenforceable due to prosecution laches, and SEC and SEA are entitled to a declaration to that effect.

296.   The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are unenforceable based upon, at least, unclean hands, and SEC and SEA are entitled to a declaration to that effect.

297.   The '105, '263, '918, '195, '592, '152, '120, '020, '916, and '863 Patents are unenforceable as to all members of JEDEC including SEC, SEA, SSI, and SAS, due to estoppel.

### PRAYER FOR RELIEF

WHEREFORE, Samsung asks this Court to enter judgment in its favor against Rambus and grant the following relief:

A.   A finding that Rambus breached Section 3.8 of the SDR/DDR IC and SDR/DDR Memory Module Patent License Agreement Between Rambus Inc. and Samsung Electronics Co., Ltd., and an award of all damages Samsung Electronics Co., Ltd. suffered as a result of the breach;

B.   A finding that Rambus breached Section 8.5 of the SDR/DDR IC and SDR/DDR Memory Module Patent License Agreement Between Rambus Inc. and Samsung Electronics Co., Ltd., and an award of all damages Samsung Electronics Co., Ltd. suffered as a result of the breach;

C.   A finding that Rambus aided and abetted the breach of fiduciary duty owed to Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. by Neil Steinberg, and an award of all damages Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. suffered as a result of the breach;

D.   A finding that Rambus intentionally interfered with a contract involving Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc., and an award of all damages Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. suffered as a result of that intentional interference;

1    E.    A finding that Rambus violated California Bus. & Prof. Code Section

2  17,200, and an award of restitution for Samsung Electronics Co., Ltd. and Samsung Electronics

3  America, Inc. for loss suffered as a result of Rambus's unfair conduct;

4    F.    A declaration that the claims of U.S. Patent No. 6,182,184 are not infringed

5  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

6    G.    A declaration that the claims of U.S. Patent No. 6,260,097 are not infringed

7  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

8    H.    A declaration that the claims of U.S. Patent No. 6,266,285 are not infringed

9  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

10    I.    A declaration that the claims of U.S. Patent No. 6,314,051 are not infringed

11  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

12    J.    A declaration that the claims of U.S. Patent No. 6,493,789 are not infringed

13  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

14    K.    A declaration that the claims of U.S. Patent No. 6,496,897 are not infringed

15  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

16    L.    A declaration that the claims of U.S. Patent No. 6,546,446 are not infringed

17  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

18    M.    A declaration that the claims of U.S. Patent No. 6,564,281 are not infringed

19  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

20    N.    A declaration that the claims of U.S. Patent No. 6,584,037 are not infringed

21  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

22    O.    A declaration that the claims of U.S. Patent No. 6,697,295 are not infringed

23  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

24    P.    A declaration that the claims of U.S. Patent No. 6,701,446 are not infringed

25  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

26    Q.    A declaration that the claims of U.S. Patent No. 6,715,020 are not infringed

27  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

28

1        R.     A declaration that the claims of U.S. Patent No. 6,751,696 are not infringed

2  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

3        S.     A declaration that the claims of U.S. Patent No. 6,807,598 are not infringed

4  by Samsung Electronics Co., Ltd. or Samsung Electronics America, Inc.;

5        T.     A declaration that the claims of U.S. Patent No. 6,182,184 are invalid and

6  unenforceable;

7        U.     A declaration that the claims of U.S. Patent No. 6,260,097 are invalid and

8  unenforceable;

9        V.     A declaration that the claims of U.S. Patent No. 6,266,285 are invalid and

10  unenforceable;

11        W.     A declaration that the claims of U.S. Patent No. 6,314,051 are invalid and

12  unenforceable;

13        X.     A declaration that the claims of U.S. Patent No. 6,493,789 are invalid and

14  unenforceable;

15        Y.     A declaration that the claims of U.S. Patent No. 6,496,897 are invalid and

16  unenforceable;

17        Z.     A declaration that the claims of U.S. Patent No. 6,546,446 are invalid and

18  unenforceable;

19        AA.     A declaration that the claims of U.S. Patent No. 6,564,281 are invalid and

20  unenforceable;

21        BB.     A declaration that the claims of U.S. Patent No. 6,584,037 are invalid and

22  unenforceable;

23        CC.     A declaration that the claims of U.S. Patent No. 6,697,295 are invalid and

24  unenforceable;

25        DD.     A declaration that the claims of U.S. Patent No. 6,701,446 are invalid and

26  unenforceable;

27        EE.     A declaration that the claims of U.S. Patent No. 6,715,020 are invalid and

28  unenforceable;

1    FF.    A declaration that the claims of U.S. Patent No. 6,751,696 are invalid and

2  unenforceable;

3    GG.    A declaration that the claims of U.S. Patent No. 6,807,598 are invalid and

4  unenforceable;

5    HH.    Award Samsung, for Rambus's unjust enrichment, all royalties collected by

6  Rambus on all patents and licenses that benefited in any way from Mr. Steinberg's work for

7  Rambus prior to termination of his employment by Samsung;

8    II.    Hold that any patents or patent applications that claim priority to any patent

9  or patent application that pre-dates the termination of Mr. Steinberg's employment by Samsung

10  may not be enforced against SEC, SEA, or any of their subsidiary or affiliate companies;

11    JJ.    An injunction barring Rambus from enforcing its patents;

12    KK.    A finding that this case is an exceptional case and an award of attorneys' fees

13  and costs to Samsung pursuant to 35 U.S.C. § 285; and

14    LL.    Any and all other relief to which it may be justly entitled.

15  Dated: November 17, 2005.

16                    Respectfully submitted,

17

18              By:   /s/ Matthew D. Powers
                           Matthew D. Powers
19              Attorney for Defendants
                SAMSUNG ELECTRONICS CO., LTD.,
20              SAMSUNG ELECTRONICS AMERICA, INC.,
                SAMSUNG SEMICONDUCTOR, INC., and
21              SAMSUNG AUSTIN SEMICONDUCTOR, L.P.

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2     Defendants   SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS

3 AMERICA,   INC.,   SAMSUNG   SEMICONDUCTOR,   INC.,   and   SAMSUNG   AUSTIN

4 SEMICONDUCTOR, L.P, hereby demand a trial by jury on all issues triable of right by a jury that

5 are raised for determination by this Amended Complaint or that may be raised by any counterclaim

6 to be filed herein.

7 Dated: November 17, 2005     WEIL, GOTSHAL & MANGES LLP

8

9           By:   /s/ Matthew D. Powers

               Matthew D. Powers

10        Attorney for Defendants

         SAMSUNG ELECTRONICS CO., LTD.,

11        SAMSUNG ELECTRONICS AMERICA, INC.,

         SAMSUNG SEMICONDUCTOR, INC., and

12        SAMSUNG AUSTIN SEMICONDUCTOR, L.P.

13

14

15

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

16     Pursuant to Civil Local 3-16, the undersigned certifies that as of this date, other than

17 the named parties, there is no such interest to report.

18 Dated: November 17, 2005     WEIL, GOTSHAL & MANGES LLP

19

20           By:   /s/ Matthew D. Powers

               Matthew D. Powers

21        Attorney for Defendants

         SAMSUNG ELECTRONICS CO., LTD.,

22        SAMSUNG ELECTRONICS AMERICA, INC.,

         SAMSUNG SEMICONDUCTOR, INC., and

23        SAMSUNG AUSTIN SEMICONDUCTOR, L.P.

24

25

26

27

28

SAMSUNG'S FIRST AMENDED ANSWER TO FIRST
AMENDED COMPLAINT FOR PATENT INFRINGEMENT    53
AND JURY DEMAND

Case No. C 05 00334 RMW