1     *Attorney list on signature page*

2

3

4

5

6

7

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

8    RAMBUS, INC.,

9             Plaintiff.

10   v.                                      Case No. C 05-00334 RMW

11   HYNIX SEMICONDUCTOR INC., HYNIX
SEMICONDUCTOR AMERICA INC., HYNIX       **SAMSUNG'S OPPOSITION TO**
SEMICONDUCTOR MANUFACTURING         **RAMBUS'S MOTION FOR SUMMARY**

12   AMERICA INC.,                            **ADJUDICATION ON 17200 CLAIM IN**

13   SAMSUNG ELECTRONICS CO., LTD.,          **"COUNT VII" OF SAMSUNG'S**
SAMSUNG ELECTRONICS AMERICA, INC.,     **COUNTERCLAIMS**

14   SAMSUNG SEMICONDUCTOR, INC.,
SAMSUNG AUSTIN SEMICONDUCTOR,        **[REDACTED VERSION]**

15   L.P.,

16   NANYA TECHNOLOGY CORPORATION,       Date:           October 26, 2007
NANYA TECHNOLOGY CORPORATION        Time:            9:00 a.m.

17   U.S.A.,                                     Location:       Courtroom 6
                                           Judge:          Hon. Ronald M. Whyte

18

19              Defendants.

RAMBUS, INC.,

20

            Plaintiff.

21   v.

22   SAMSUNG ELECTRONICS CO., LTD.,        Case No. C 05-02298 RMW
SAMSUNG ELECTRONICS AMERICA, INC.,

23   SAMSUNG SEMICONDUCTOR, INC.,
SAMSUNG AUSTIN SEMICONDUCTOR,

24   L.P.,

25             Defendants.

26

27

28

# TABLE OF CONTENTS

**Page**

Preliminary Statement ........................................................................................................ 1

Background ........................................................................................................................ 2

I.     The Rambus-Samsung License Agreement ............................................................. 2

II.    The Rambus/Infineon Litigation ............................................................................. 4

III.   The Parties' Renegotiation of the License Agreement ........................................... 5

IV.    The 2005 Infineon Remand ..................................................................................... 5

V.     Samsung's 17200 Counterclaim ............................................................................. 6

Argument ........................................................................................................................... 7

I.     In Failing to Address All the Possible Grounds for Samsung's 17200 Claim,
       Rambus Makes a Facially Insufficient Summary-Judgment Request ..................... 7

II.    Samsung Did Not Release Its 17200 Claim in Section 2.12 of the 2000 License .... 8

       A.     The Release in Section 2.12 Is Limited by the Subject Matter of the
              Agreement, Which Involves Freedom from Infringement Claims and
              Particular Details of the Parties' Licensing Relationship ......................... 8

       B.     Contemporaneous Extrinsic Evidence Demonstrates That the Parties Did
              Not Believe the Release Covered JEDEC-Related Claims .......................... 11

       C.     Rambus's Subsequent Conduct Demonstrates That Rambus Did Not
              Believe the Release Covered JEDEC-Related Claims ................................ 13

       D.     The Release in Section 2.12 Does Not Contemplate Counterclaims ............ 15

III.   The Renegotiations in 2001 That Resulted in Amendment No. 1 Did Not
       Constitute an Implied Waiver of Samsung's 17200 Claim ...................................... 15

       A.     Rambus's Implied-Waiver Argument Fails Because Samsung Did Not Sue
              Rambus for Damages for Fraudulent Inducement, But Rather Rambus
              Terminated the License and Sued Samsung for Infringement. .................... 15

       B.     There Was No Implied Waiver Because Samsung Did Not Have Full
              Knowledge of the Material Facts When Amendment No. 1 Was Executed ........ 18

       C.     Samsung and Rambus Made No Effort To Effect a Waiver and Never
              Communicated That the 2001 Renegotiation Effected a Waiver of Any and
              All Claims Connected with Rambus's JEDEC Conduct ............................ 20

              1.     The Contract Contains an Express Waiver of Rights in Section 2.12 ...... 20

              2.     Samsung Never Communicated to Rambus Any Intent To Waive
                     JEDEC-Related Claims and Amendment No. 1 Does Not Contain
                     Any Statement of Intent To Waive or Release Claims. ........................... 21

Conclusion ........................................................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*Biggins v. Oltmer Iron Works*,
    154 F.2d 214 (7th Cir. 1946)..................................................................................7

*Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*,
    2 Cal. App. 4th 342 (1992)................................................................................20

*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    80 Cal. Rptr. 2d 329 (Ct. App. 1998).......................................................11, 13

*Coffman v. Fed. Labs.*,
    171 F.2d 94 (3d Cir. 1948).................................................................................7

*DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.*,
    30 Cal. App. 4th 54 (1994)...............................................................................19

*Dorr v. Janssen*,
    378 P.2d 999 (Or. 1963)...................................................................................17

*Foad Consulting Group, Inc. v. Musil Govan Azzalino*,
    270 F.3d 821 (9th Cir. 2001).............................................................................11

*Harpold v. Stock*,
    65 So. 2d 477 (Fla. 1953).................................................................................17

*Jefferson v. California Dep't of Youth Authority*
    28 Cal. 4th 299 (2002) ....................................................................................10

*Kendall McGaw Labs. Inc. v. Community Mem. Hosp.*,
    125 F.R.D. 420 (D.N.J. 1989)............................................................................7

*Leon v. Family Fitness Center (No. 107), Inc.*,
    61 Cal. App. 4th 1227 (Ct. App. 1998)............................................................11

*Linda Coal & Supply Co. v. Tasa Coal Co.*,
    204 A.2d 451 (Pa. 1964)..................................................................................17

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir.2000).............................................................................8

*Marder v. Lopez*,
    450 F.3d 445 (9th Cir. 2006)............................................................................11

*Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*,
    144 Cal. App. 4th 1175 (Ct. App. 2006).....................................15, 16, 17, 19, 20

*Oleet v. Pa. Exchange Bank*,
    285 A.D. 411 (N.Y. App. Div. 1955)...............................................................17

*Rambus Inc. v. Infineon Techs, AG,*
    164 F. Supp. 2d 743 (E.D. Va. 2001)................................................................... 14

*Rambus, Inc. v. Infineon Techs. AG,*
    330 F. Supp. 2d 679 (E.D. Va. 2004)................................................................... 5

*Rambus, Inc. v. Infineon Techs. AG,*
    CA No. 3:00cv524 (E.D. Va.)............................................................................... 4

*Samsung Elecs. Co. v. Rambus Inc.,*
    386 F. Supp. 2d 708 (E.D.Va. 2005)................................................................... 17

*Samsung Elecs. Co. v. Rambus, Inc.,*
    439 F. Supp. 2d 524 (E.D. Va. 2006)...................................................... 2, 3, 19, 20

*Schmidt v. Mesmer,*
    116 Cal. 267 (1897) ............................................................................................ 16

*Sweat v. Big Time Auto Racing, Inc.,*
    12 Cal. Rptr. 3d 678 (Ct. App. 2004)................................................................... 11

*Trident Ctr. v. Conn. Gen. Life Ins. Co.,*
    847 F.2d 564 (9th Cir. 1988)............................................................................... 11

*Victoria v. Superior Court,*
    222 Cal. Rptr. 1 (1985) ....................................................................................... 8

*Vikco Ins. Services, Inc. v. Ohio Indemnity Co.,*
    70 Cal. App. 4th 55 (1999).................................................................................. 20

*Wal-Noon Corp. v. Hill,*
    45 Cal. App. 3d 605 (1975)................................................................................. 20

*Welles v. Turner Entm't Co.,*
    488 F.3d 1178 (9th Cir. 2007)............................................................................. 8

*Winet v. Price*
    4 Cal. App. 4th 1159 (Cal. Ct. App. 1992) ......................................................... 10

*Yount v. Acuff Rose-Opryland,*
    103 F.3d 830 (9th Cir. 1996)............................................................................... 21

**STATUTES**

Cal. Bus. & Prof. Code § 17200 ................................................................................... 6

Cal. Civ. Code § 1636 (2004) ...................................................................................... 11

1

**PRELIMINARY STATEMENT**

2   Rambus's motion for summary adjudication, which impermissibly seeks judgment on a

3   intermediate facts rather than on an entire claim, is premised on a release provision in a patent

4   license agreement between Rambus and Samsung.   Neither of the two arguments Rambus

5   advances in its motion justifies summary judgment.

6   First, despite Rambus's attempt to evade liability through a sweeping and erroneous

7   interpretation of the release provision, the JEDEC-related grounds for Samsung's 17200

8   counterclaim are unrelated to that patent license agreement and in fact exist completely

9   independent of the agreement.

10
# REDACTED
11

12

13

14   Moreover, the facts surrounding the negotiation of the license, as well as the conduct of

15   the parties in implementing the license since its execution (which may be considered under

16   controlling California law) demonstrate that the release is narrow and limited to patent claims,

17   and does not reach the claims here.   At a minimum, this evidence demonstrates that genuine

18   issues of material fact on the scope of the release exist.

19   Rambus's second contention—that Samsung impliedly waived its right to raise the

20   JEDEC-related grounds of its 17200 counterclaim when the parties negotiated an amendment to

21   the license agreement in 2001—is likewise unsupportable.   The authority upon which Rambus's

22   implied-waiver argument rests is inapplicable to the circumstances of this case because it was

23   Rambus who terminated the parties' agreement and initiated suit against Samsung, not vice versa.

24   And the parties' intent that Samsung should have the right to challenge the enforceability of

25   Rambus's patents via counterclaim if Rambus first asserted the licensed patents against Samsung

26   is confirmed by the language of the parties' agreement and the contemporaneous statements of

27   Rambus's negotiator.

28   Rambus's implied-waiver theory also fails because Samsung lacked full knowledge of all

1    material facts relating to Rambus's JEDEC misconduct at the time it negotiated the 2001

2    amendment to the parties' license agreement—a prerequisite for any waiver under California law.

3    Moreover, the language of the 2001 amendment to the parties' license agreement contains no

4    statement of intended waiver and Rambus has failed to present any evidence that Samsung ever

5    possessed that intent or, much less, communicated such an intent to Rambus.   Rambus is left

6    with the controlling language of the contract, which contains an express release that alone dictates

7    the scope of released claims.   Because the JEDEC portion of Samsung's 17200 counterclaim

8    falls squarely outside the scope of that express release, Rambus' summary-judgment motion must

9    be denied.

10                                          **BACKGROUND**

11   **I.     THE RAMBUS-SAMSUNG LICENSE AGREEMENT**

12         Some background on the history of the Samsung/Rambus relationship, including patent

13   licensing and litigation, will place Samsung's 17200 counterclaim into proper context and

14   highlight the nature of the JEDEC-related grounds for that claim as distinct from the patent

15   license agreement.   As this Court has learned through its extensive experience with Rambus as a

16   litigant, Rambus began licensing technology in the 1990s for a new proprietary memory called

17   "RDRAM."   Samsung took a license from Rambus for RDRAM and, ultimately, became

18   Rambus's biggest ally and promoter in the memory market, investing huge sums in

19   manufacturing and marketing RDRAM.   Today, Samsung remains a licensee for RDRAM, and

20   is the largest manufacturer of RDRAM products, including the Rambus memory that is used in

21   Sony Playstation products (the "flagship" user of RDRAM).

22         Secretly, beginning in early 1998 and continuing through 1999 and 2000, Rambus

23   developed, refined, and implemented a patent licensing and litigation strategy against mainstream

24   memory technology that competed with its proprietary RDRAM memory products.   *See*

25   *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F.Supp.2d 524, 527-28 (E.D. Va. 2006).   This

26   mainstream memory was developed out of open industry standard-setting activities taking place

27   at JEDEC.   In the mid-1990's, Rambus participated in the JEDEC standard-setting process

28   without disclosing any intent to assert its patents against "non-Rambus" memory or any assertion

1    that it had rights to the open standards being developed by the industry.   *Id*. at 544-45.

2    Rambus's secret strategy was aimed at Samsung as well as several other specifically identified

3    manufacturers of memory products.   Among the other targeted manufacturers were Infineon,

4    Micron, and Hynix.   *Id*. at 528.

5        This very misconduct was the subject of a lengthy investigation by the Federal Trade

6    Commission ("FTC"), which culminated in a liability opinion dated July 31, 2006.   In its

7    opinion, the FTC found that Rambus's actions in infiltrating JEDEC, developing and

8    implementing its secret plan to reap royalties from non-Rambus memory products, and its later

9    litigation against the industry, violated United States antitrust laws.   Ex. 1 at 118-19.   The FTC

10   held a hearing to determine the remedies to be applied to correct the ill effects of Rambus's illegal

11   conduct, and ordered on February 2, 2007 that Rambus can no longer charge licensees more than

12   a maximum allowable royalty of 0.25% for SDRAMs and 0.5% for DDR DRAMs.   Ex. 13 at 2-

13   3.   Rambus has appealed the FTC's decision to the D.C. Circuit Court of Appeals.

14       In October 2000, after unleashing its strategy with a series of patent-infringement lawsuits

15   against mainstream SDRAM and DDR DRAM products, Rambus entered into a patent license

16   agreement with Samsung.

17

18

19

20

21   # REDACTED

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12

# REDACTED

13   **II.    THE RAMBUS/INFINEON LITIGATION**

14          Rambus began litigating patent claims against SDRAM and DDR DRAM products made

15   by Infineon Technologies AG in August 2000.   *Rambus, Inc. v. Infineon Techs. AG*, CA No.

16   3:00cv524 (E.D. Va.).   Infineon counterclaimed in that action against Rambus for fraud based

17   on Rambus's claim that it obtained patents covering JEDEC standardized memory; Rambus,

18   however, never disclosed its patents or applications to JEDEC in the standard-setting process.

19   In connection with those fraud claims at trial, Infineon introduced evidence that Rambus attended

20   the JEDEC meetings first to try to get its own technology adopted as an industry standard; when

21

22

23

24   # REDACTED

25

26

27

28

1 that failed, Rambus continued to attend meetings to learn about the proposed standards being

2 developed so it could clandestinely use that information to attempt to obtain additional patents

3 covering those standards.   *Rambus, Inc. v. Infineon Techs. AG*, 330 F.Supp.2d 679, 682-83 (E.D.

4 Va. 2004).   Rambus then deliberately waited until after the industry had become "locked in" to

5 producing products that complied with the relevant standards to announce ownership of patents it

6 asserted covered the standards.   *Id.* at 683.   The *Infineon* litigation progressed to trial in April

7 2001, resulting shortly thereafter in a judgment of noninfringement against Rambus's patent

8 claims and also a verdict of fraud against Rambus.   *Id.*

9 **III. THE PARTIES' RENEGOTIATION OF THE LICENSE AGREEMENT**

REDACTED

25 **IV. THE 2005 *INFINEON* REMAND**

26   Subsequent to the parties' negotiation of the 2001 Amendment, the Federal Circuit

27 remanded the *Infineon* litigation to the Eastern District of Virginia.   During discovery on

28 remand, the district court pierced Rambus's attorney-client privilege under the crime/fraud

SAMSUNG'S OPPOSITION TO RAMBUS'S
MOTION FOR SUMMARY ADJUDICATION  5   CASE NO. C 05 00334 RMW
               CASE NO. C 05 02298 RMW

exception, and Rambus produced an additional 4,673 documents that had previously been withheld under a claim of privilege.   Ex. 7 at 33.   These documents revealed for the first time details of Rambus's efforts to obtain patent coverage for the technology being standardized at JEDEC, specific details of Rambus's licensing and litigation strategy whereby Rambus secretly planned to assert its patents against JEDEC-compliant memory products only after the DRAM manufacturers became sufficiently locked-in to the standards, Rambus's secret dual employment of Samsung's in-house counsel, and details regarding Rambus's massive spoliation of evidence in an effort to conceal its misconduct relevant to each of these subjects.

V.     SAMSUNG'S 17200 COUNTERCLAIM

# REDACTED

Rambus filed the present actions against Samsung on June 6, 2005.   *See* Rambus's Am. Compl. in Case No. 05cv00334; Rambus's Orig. Compl. in Case No. 05cv02298. The lawsuits assert infringement of Rambus's patents by Samsung's JEDEC-compliant SDRAMs and DDR DRAMs.   Rambus's Orig. Compl. at ¶ 10 and Counts I-X; Rambus's Am. Compl. at ¶ 13 and Counts I-IV, IX-XVIII.   In its Second Amended Answer and Counterclaims, Samsung asserts a counterclaim for Rambus's violation of California's unfair competition statute, CAL. BUS. & PROF. CODE § 17200.   *See* Samsung's 2d. Am. Answer & Countercls. at Count VII. Samsung's 17200 counterclaim arises out of Rambus's efforts to surreptitiously obtain patent coverage for open-standards memory technology standardized at JEDEC while failing to disclose its pending patent applications to JEDEC members, as well as Rambus's secret hiring of Samsung's in-house counsel, Neil Steinberg, at a time when Steinberg was employed by Samsung under a written employment contract that precluded any alternative employment, and Rambus's massive spoliation of evidence in an effort to conceal not only its JEDEC misconduct, but also its long-standing litigation plans against the DRAM industry.   *Id.* at ¶¶ 285-291.   Under the Court's Joint Case Management Order, only the JEDEC-related grounds for Samsung's 17200 counterclaim will be tried at the upcoming consolidated conduct trial in January 2008.   *See* Jt.

1   Case Mgmt. Conf. Stmnt. (July 31, 2007) at Attachment 4.   The remaining bases for Samsung's

2   17200 claim will be tried in later phases of the case.

3                                                    ARGUMENT

4   I.      IN FAILING TO ADDRESS ALL THE POSSIBLE GROUNDS FOR SAMSUNG'S 17200 CLAIM,
            RAMBUS MAKES A FACIALLY INSUFFICIENT SUMMARY-JUDGMENT REQUEST.
5

6           Rambus seeks summary judgment on only the JEDEC-related grounds for Samsung's

7   17200 counterclaim, Mot. at 2 n.2, and in doing so presents the Court with a facially invalid

8   summary-judgment motion.   The "JEDEC" facts are only some of the factual allegations upon

9   which Samsung bases its 17200 counterclaim.   Samsung pleaded other grounds in support of the

10  claim as well, such as Rambus's dual employment of Neil Steinberg and its massive spoliation of

11  evidence prior to unleashing its licensing and litigation policy on the DRAM industry starting in

12  2000.   *See* Samsung's 2d Am. Answer & Countercls. at ¶¶ 285-91.   Even assuming that all of

13  the arguments Rambus articulates in support of its motion are correct with respect to the

14  "JEDEC" facts, which they are not, summary judgment on Samsung's 17200 counterclaim is

15  available *only* if Rambus can demonstrate that there is no material fact issue as to the *entire*

16  counterclaim.   "Summary judgment may be had as to one claim among many, but it is well

17  settled that neither subsection [of Rule 56] allows such a judgment as to one portion a claim."

18  *Kendall McGaw Labs. Inc. v. Community Mem. Hosp.*, 125 F.R.D. 420, 421 (D.N.J. 1989); *see*

19  *also Biggins v. Oltmer Iron Works*, 154 F.2d 214, 216 (7th Cir. 1946) (Rule 56 "does not

20  contemplate a summary judgment for a portion of a single claim in suit. Neither does any other

21  rule of the Rules of Civil Procedure so contemplate"); *Coffman v. Fed. Labs.*, 171 F.2d 94, 98 (3d

22  Cir. 1948) (explaining that Rule 56 "does not contemplate a summary judgment for a portion of a

23  single claim in suit").   Rambus cannot obtain summary judgment on intermediate facts in

24  support of a claim; summary judgment is available only for entire claims or defenses.

25          Although Rambus acknowledges that Samsung's counterclaim is premised on more than

26  just Rambus's JEDEC misconduct, *see* Mot. at 2 n.2 (noting Samsung's spoliation and Steinberg

27  allegations), Rambus impermissibly seeks summary adjudication solely on the JEDEC bases of

28  Samsung's 17200 counterclaim.   Even if Rambus's request were granted, Samsung's

1   counterclaim could not be disposed of, and Rambus fails to demonstrate or even suggest that it

2   could be.

3          Moreover, summary judgment on a claim is, of course, precluded if a material fact issue

4   exists, *see, e.g., Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir.2000) (en banc), and there are most

5   definitely, at a minimum, material fact issues regarding whether Rambus's spoliation of evidence

6   and secret retention of Samsung's in-house counsel, Neil Steinberg, constitute unfair competition

7   under Section 17200—particularly since the Court must, in deciding Rambus's motion, view the

8   evidence in the light most favorable to Samsung and draw all reasonable inferences in Samsung's

9   favor.   *Welles v. Turner Entm't Co.*, 488 F.3d 1178, 1183 (9th Cir. 2007).   Rambus's summary-

10  judgment motion is, quite simply, improper and should be denied.

11  II.    **SAMSUNG DID NOT RELEASE ITS 17200 CLAIM IN SECTION 2.12 OF THE 2000 LICENSE.**

12         A.     **The Release in Section 2.12 Is Limited by the Subject Matter of the
                  Agreement, Which Involves Freedom from Infringement Claims and
13                Particular Details of the Parties' Licensing Relationship.**

14

15

16

17                              REDACTED

18

19

20

21

22

23

24

25

26

27                              REDACTED

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**REDACTED**

The authority Rambus cites does not support its overbroad construction of the release's

1    scope.   In *Jefferson v. California Dep't of Youth Authority*, for instance, the California Supreme

2    Court held that the plaintiff had released her sex-discrimination claim against her former

3    supervisor in a workers' compensation settlement for stress-related injuries.   28 Cal. 4th 299,

4    302 (2002).   Rambus focuses on the court's uncontroversial holding that "all claims" covers

5    claims that are not expressly enumerated in the release, but fails to recognize the significance of

6    the express language of the release, which limits the scope of the release to claims "which may

7    hereafter arise or develop *as a result of [the claimed stress-related] injury*."   *Id.* (emphasis

8    added).   Because the plaintiff's claim was based on conduct of her supervisor that had *caused*

9    her stress-related injury, the court merely honored the explicit language of the release to preclude

10   a claim that plainly developed as a result of the plaintiff's stress-related injury.   The holding in

11   *Jefferson* does not justify Rambus's expansion of the scope of Samsung's release beyond claims

12   related to or arising out of Samsung's licensing relationship with Rambus.

13        Rambus's reliance on *Winet v. Price* similarly fails to support its overbroad reading of

14   Samsung's release, and in fact illustrates that the JEDEC-related grounds for Samsung's 17200

15   claim are not covered by the release.   The release in *Winet*, in which the plaintiff was barred

16   from asserting a malpractice claim against his former attorney as a result of a release given in

17   settlement of an earlier fee dispute, specifically included within its scope claims "arising out of or

18   in any manner connected with the performance of legal services" by the attorney for the plaintiff.

19   4 Cal. App. 4th 1159, 1163 (Cal. Ct. App. 1992) (internal quotation marks omitted).   Given the

20   explicit language extending the *Winet* release to preclude any claims connected with the

21   attorney's provision of legal services to the plaintiff, and not limiting it to just the fees-related

22   subject matter of the agreement, the court not surprisingly decided that the plaintiff's malpractice

23   claims were released in the fees settlement.   The breadth of the expansive *Winet* release, which

24   explicitly and unambiguously included all facets of the attorney's representation of the plaintiff

25   within its scope, stands in stark contrast to the more limited release granted by Samsung to

26   Rambus.   In fact, the *Winet* decision illustrates that for Samsung to have released any and all

27   claims related to Rambus's patents—as Rambus would have it—rather than just those claims

28   relating to or arising out of the parties' licensing relationship, an explicit statement expanding the

SAMSUNG'S OPPOSITION TO RAMBUS'S                                   CASE NO. C 05 00334 RMW
MOTION FOR SUMMARY ADJUDICATION          10                        CASE NO. C 05 02298 RMW

1   release to any claims "arising out of or in any manner connected with Rambus's patents" would

2   have been required.[3]

3       **B.**     **Contemporaneous Extrinsic Evidence Demonstrates That the Parties Did Not Believe the Release Covered JEDEC-Related Claims**

4       Under California law, the fundamental goal of contract interpretation is to give effect to

5   the mutual intent of the parties as it existed at the time of contracting.   CAL. CIV. CODE § 1636

6   (2004).   The "mutual intention" to which the courts give effect is determined by "objective

7   manifestations of the parties' intent, including the words used in the agreement, as well as

8   extrinsic evidence of such objective matters as [1] the surrounding circumstances under which the

9   parties negotiated or entered into the contract; [2] the object, nature and subject matter of the

10   contact; and [3] the subsequent acts and conduct of the parties."   *City of Atascadero v. Merrill*

11   *Lynch, Pierce, Fenner & Smith, Inc.*, 80 Cal. Rptr. 2d 329, 474 (Ct. App. 1998) (as modified on

12   denial of reh'g Jan. 6, 1999).   Accordingly, under California law, even if the written agreement

13   of the parties is clear and unambiguous on its face, the Court must consider relevant extrinsic

14   evidence that can demonstrate a meaning to which the language of the contract is reasonably

15   susceptible.   *Trident Ctr. v. Conn. Gen. Life Ins. Co.*, 847 F.2d 564, 570 n.6 (9th Cir. 1988)

16   (reversing grant of summary judgment to allow plaintiff to present extrinsic evidence); *Foad*

17   *Consulting Group, Inc. v. Musil Govan Azzalino*, 270 F.3d 821, 828 (9th Cir. 2001) (explaining

18   that California parol evidence rule "requires courts to consider extrinsic evidence of possible

19   ambiguity even where the terms of the contract appear unequivocal. And if a party's extrinsic

20

21   [3] *See also, e.g., Sweat v. Big Time Auto Racing, Inc.*, 12 Cal. Rptr. 3d 678, 1307-08 (Ct. App. 2004) (release of race-related injury might include collapse of bleachers due to race-related event, but did not include claim for same injury when events leading to collapse of bleachers were not

22   race-related); *Leon v. Family Fitness Center (No. 107), Inc.*, 61 Cal. App. 4th 1227, 1231, 1235

23   (Ct. App. 1998) (where general release to gain access to fitness club released claims "resulting from or related to Member's use of the facilities or participation in any sport, exercise or activity

24   within or without the club premises," claim for injury sustained when sauna bench collapsed was not released because "Family Fitness's negligence was not reasonably related to the object or

25   purpose for which the release was given, that is, *as stated*, injuries resulting from participating in sports or exercise rather than from merely reclining on the facility's furniture") (emphasis added);

26   *Marder v. Lopez*, 450 F.3d 445, 449 (9th Cir. 2006) (where plaintiff, who inspired movie *Flashdance*, signed release of claims "arising out of or in any way connected with, either directly

27   or indirectly, any and all arrangements . . . in connection with the preparation of screenplay materials and the production, filming and exploitation of . . . *Flashdance*," release did not cover

28   claim against Paramount for defaming her dance routine because insufficient nexus to subject matter of release) (internal quotation marks omitted).

1   evidence creates the possibility of ambiguity, a court may not rely on the text of the contract
2   alone to determine the intent of the parties").

REDACTED

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

# REDACTED

20

21

22

23

24

25

26

27

28

**C.      Rambus's Subsequent Conduct Demonstrates That Rambus Did Not Believe the Release Covered JEDEC-Related Claims.**

Under California law, the Court may also consider facts concerning post-contract performance to determine the meaning of a contract's terms. *See, e.g., City of Atascadero*, 80 Cal. Rptr. 2d at 474.   Samsung and Rambus's course of conduct after the execution of the agreement demonstrates that they understood the release to be narrow in scope and limited to patent issues.

---

[4] The deleted language from former Section 2.11 was included in revised form in Section 8.4 of the final agreement, but was recrafted, per Steinberg's email, to permit Rambus to terminate the agreement if Samsung voluntarily participated in any effort to challenge the validity and/or enforceability of any of the Rambus Patents.   Ex. 2 at R1119729-30.   Again, Rambus need not have included this language if Samsung had already released Rambus from any and all liability that might affect the validity or enforceability of its patents.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

REDACTED

_____

5

24
25
26
27
28

REDACTED

# REDACTED

**D.    The Release in Section 2.12 Does Not Contemplate Counterclaims.**

Rambus's erroneous reading of the release must be rejected for another reason as well. The express language of Section 2.12's general release does not include or contemplate counterclaims, which is what is at issue in Rambus's motion.   The purpose of the release, as demonstrated by the plain language of the license and parol evidence indicating the parties' understanding, *see supra* Sections II.A, II.B, was to preclude Samsung from suing Rambus on grounds relating to Rambus's licensing of its patents to Samsung.   The release does not contemplate the circumstance presented here—where it was Rambus who unilaterally terminated the license and asserted its patents against Samsung.   Because Rambus offensively asserted its patents against Samsung, Samsung's 17200 counterclaim challenging the enforceability of Rambus's patents is much more akin to a defense than an affirmative claim in the context of this license.

# REDACTED

**III.    THE RENEGOTIATIONS IN 2001 THAT RESULTED IN AMENDMENT NO. 1 DID NOT CONSTITUTE AN IMPLIED WAIVER OF SAMSUNG'S 17200 CLAIM.**

**A.    Rambus's Implied-Waiver Argument Fails Because Samsung Did Not Sue Rambus for Damages for Fraudulent Inducement, But Rather Rambus Terminated the License and Sued Samsung for Infringement.**

Rambus wrongly contends that by negotiating an amendment to the license after Samsung learned certain information about Rambus's JEDEC conduct, Samsung somehow implicitly waived any future claims involving Rambus's JEDEC conduct.   Rambus's implied-waiver argument relies entirely on a line of California authority, articulated most recently by the California Court of Appeals in *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, 144 Cal. App. 4th 1175 (Ct. App. 2006), that holds that when a contracting party contends that it was

1   induced into signing a contract by fraud or deceit, the party is deemed to have waived a damages

2   claim arising from the fraud if, after discovery of the fraud, he enters into a new contract with the

3   defendant regarding the same subject matter that confers upon him significant benefits.   *Id.* at

4   1186.   But a review of *Oakland Raiders* and the authority upon which it rests reveals that its

5   holding does not extend to the situation here, in which Rambus sued Samsung for patent

6   infringement.

7           The *Oakland Raiders* court made much of the fact that, upon learning of a

8   misrepresentation regarding ticket sales, the Oakland Raiders entered into a new contract with the

9   Oakland-Alameda County Coliseum (OACC) *without ever mentioning any knowledge of the*

10  *misrepresentation*, and then later rescinded the contract and sued the OACC for damages arising

11  from its misrepresentation.   *Id.* at 1190-91.   The Oakland Raiders' failure to notify the OACC

12  of its knowledge of the misrepresentation rendered inequitable its later rescission of the contract

13  and suit for damages arising from the misrepresentation:

>           [I]t is evident that the party who keeps his intended charge of fraud secret for
>           years has a great advantage *in preparing for a future intended action, which he*
>           *alone anticipates*, over his adversary, who has had no intimation of such action or
>           such charge of fraud, and has had no reason to preserve or discover evidence
>           concerning it. Noting the injustice of permitting a party to gain new benefits
>           'without giving any warning to the other party that he intends at some future time
>           to charge him with fraud,' the [California Supreme Court in *Schmidt*] fashioned
>           the rule that a party aware of the alleged fraud must stand at arm's length from his
>           adversary and not enter into a new agreement extracting concessions, lest he be
>           deemed to have waived his claim of fraud.

20  *Id.* at 1189 (internal citation omitted) (emphasis added).   The *Oakland Raiders* court, as well as

21  the California Supreme Court in *Schmidt v. Mesmer*, 116 Cal. 267 (1897), hinged their decisions

22  on the inequity inherent in concealing an intent to bring a future fraud claim while extracting

23  benefits through a new contractual deal, resorting to estoppel, rather than pure waiver principles,

24  to prevent the party against whom waiver is asserted from inducing reliance by the other party.

25  *Id.* at 1190.

26          This reasoning demonstrates that the *Oakland Raiders/Schmidt* analysis, upon which

27  Rambus's implied waiver argument exclusively rests, is wholly inapplicable to the case at bar.

28                                      **REDACTED**

1

2

3

4

5

6

7

# REDACTED

8

9

10

11

12

13

14            Because Rambus was in no way induced to rely on any conduct

15   of or silence by Samsung in connection with the 2001 negotiations, *Oakland Raiders* and *Schmidt*

16   do not dictate the result in this case.

17            Moreover, the significance of the sequence of events in this case—that Rambus initiated

18

---

19   [6] The facts of *Oakland Raiders* and every case cited therein in support of its implied-waiver
     holding involve a suit    for fraud damages initiated by the party against whom waiver is asserted.
20   *See Oakland Raiders*, 144 Cal. App. 4th at 1187 (citing *Dorr v. Janssen*, 378 P.2d 999, 1001 (Or.
     1963) (request and agreement to extend time for payment ***waived fraud claim*** as a matter of law);
21   *Harpold v. Stock*, 65 So.2d 477, 478 (Fla. 1953) (purchaser of stock who negotiated a new
     contract with seller and received additional concessions ***waived claim of fraudulent inducement***);
22   *Oleet v. Pa. Exchange Bank*, 285 A.D. 411, 413-15 (N.Y. App. Div. 1955) (borrowers who
     c***laimed bank fraudulently induced*** them to sign promissory notes negotiated subsequent
23   agreement changing the timing and terms of payment; complaint dismissed at the pleading stage);
     *Linda Coal & Supply Co. v. Tasa Coal Co.*, 204 A.2d 451, 453-54 (Pa. 1964) (tenant who, ***after***
24   ***discovery of alleged fraud***, reaches a new agreement with landlord granting him more favorable
     terms ***waives claim for damages***)).
25   [7]

26

27   # REDACTED

28

---

1  suit against Samsung for infringement in response to which Samsung asserted a counterclaim

2  based in part on Rambus's JEDEC conduct—is underscored by a provision in the SDR/DDR

3  License and carried over to the 2001 Amendment.

# REDACTED

**B.**   **There Was No Implied Waiver Because Samsung Did Not Have Full Knowledge of the Material Facts When Amendment No. 1 Was Executed.**

Rambus's reliance on *Oakland Raiders* as the basis for its implied-waiver theory fails for an additional reason.   The *Oakland Raiders* court acknowledged the California Supreme Court's holding in *Schmidt* that, for a party to be deemed to have waived a cause of action for fraud based on entering into a second contract covering the same subject matter with the party who committed

the fraud, the party against whom waiver is asserted must have done so "with full knowledge of all the material facts."   *Oakland Raiders*, 144 Cal. App. 4th at 1192, *see also DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd.* 30 Cal. App. 4th 54, 59 (1994) (reiterating general principle that waiver involves the intentional relinquishment of a known right after full knowledge of the facts).   But Samsung did not have full knowledge of all the material facts relating to Rambus's JEDEC misconduct when it negotiated the 2001 Amendment with Rambus. Although Samsung knew at the time of the fraud verdict reached by the *Infineon* jury, many more damaging details regarding Rambus's efforts to surreptitiously obtain patent coverage over the technology being standardized at JEDEC were revealed when the *Infineon* district court pierced Rambus's attorney-client privilege under the crime-fraud exception upon remand of the *Infineon* case in 2004.

Documents produced as a result of the *Infineon* court's privilege-piercing order revealed, for instance, that Rambus's JEDEC representative, Richard Crisp, was meeting regularly with Rambus's in-house and outside patent counsel to discuss ways to amend Rambus's pending patent claims to cover JEDEC standards being discussed at the JEDEC meetings he attended so that Rambus could assert its patents against those who manufactured compliant products, including Samsung.   *See Samsung Elecs. Co. v. Rambus Inc.*, 439 F.Supp.2d 524, 544 (E.D.Va. 2006).   Likewise, Samsung first learned from documents produced after the 2001 negotiations that Rambus had not only ranked Samsung among its most desirable litigation targets based on an analysis of various business and litigation-related factors, but had also reverse-engineered one of Samsung's JEDEC-compliant SDRAMs.   *Id.* at 553.   Nor did Samsung know until the *Infineon* remand in 2005 that Rambus had secretly retained Samsung's in-house counsel, Neil Steinberg, at a time when Steinberg was still employed by Samsung under an employment contract that prohibited such alternative employment, to help Rambus create a licensing and litigation strategy that involved asserting Rambus's patents against JEDEC-compliant DRAMs manufactured by Samsung and others.   *Id.* at 549, 557-58.   Finally, Samsung was without the requisite knowledge until at least 2005 of Rambus's efforts to destroy massive amounts of damaging evidence that would reveal its conduct at JEDEC and its long-standing litigation plans against the

1  DRAM industry.   *Id.* at 549-54, 559.

2      In light of the vast amount of information that Samsung did not have about Rambus's

3  conduct at the time the parties renegotiated their SDR/DDR License in 2001, it certainly cannot

4  be said that Samsung had "full knowledge of all material facts" such that Samsung could now be

5  deemed to have waived its JEDEC-related counterclaim.   *Oakland Raiders*, 144 Cal. App. 4th at

6  1192.   At a minimum, construing the evidence in the light most favorable to Samsung and

7  drawing all inferences in Samsung's favor, a fact issue is presented for trial, and Rambus's

8  motion must be denied.

9    **C.    Samsung and Rambus Made No Effort To Effect a Waiver and Never**
          **Communicated That the 2001 Renegotiation Effected a Waiver of Any and**
10         **All Claims Connected with Rambus's JEDEC Conduct.**

11        1.    The Contract Contains an Express Waiver of Rights in Section 2.12.

12     Upon the failure of its implied-waiver argument, Rambus is left with the express language

13 of the parties' agreement, which already contains an explicit waiver of rights in Section 2.12's

14 release provision.   Because the parties reduced their intended release to writing, it would be

15 illogical and against accepted rules of contract interpretation to read an additional, unstated

16 waiver into the contract as a backstop in the event that a claim is not covered by the express

17 release.   *See Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal.

18 App. 4th 342, 374 (1992) ("[A]s a general matter, implied terms should never be read to vary

19 express terms"); *Wal-Noon Corp. v. Hill*, 45 Cal. App. 3d 605, 613 (1975) ("This is in accord

20 with the general principle that, in interpreting a contract 'an implication ... should not be made

21 when the contrary is indicated in clear and express words.'") (quoting 3 A. CORBIN, CONTRACTS

22 § 564 (2d ed. 1960)); *Vikco Ins. Services, Inc. v. Ohio Indemnity Co.*, 70 Cal. App. 4th 55, 70

23 (1999) ("Implied covenants are disfavored at law. The courts will not imply a better agreement

24 for parties than they themselves have been satisfied to enter into, or rewrite contracts whenever

25 the operate harshly.   There can be no implied covenant where the subject matter is completely

26 covered by the existing contract.").

27

28

2.  Samsung Never Communicated to Rambus Any Intent To Waive JEDEC-Related Claims and Amendment No. 1 Does Not Contain Any Statement of Intent To Waive or Release Claims.

Significantly, Rambus presents no evidence that Samsung communicated any intent to waive JEDEC-related claims during the course of the parties' negotiations in 2001.

REDACTED

Certainly nothing in Samsung's letter can be construed as a communication to Rambus of Samsung's intent that any amendment negotiated as a result of the *Infineon* verdict should act as a waiver of Samsung's right to pursue JEDEC-related claims against Rambus in the future, particularly if such claims are asserted as counterclaims to an infringement suit initiated by Rambus upon Rambus's termination of the parties' agreement.   Moreover, Rambus's reliance on Samsung's statement in Delaware briefing is nothing more than a "gotcha" that has no relevance to the issue of waiver, as it fails to demonstrate that any contemporaneous understanding that Samsung intended to effect a waiver was ever communicated to Rambus during negotiations in 2001.   *See, e.g., Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 836 (9th Cir. 1996) (under California law, subjective, uncommunicated intent is irrelevant to contract interpretation).

The fact remains that, despite Rambus's attempt to portray a statement from Samsung's Delaware briefing as an admission of some relevance, Amendment No. 1 lacks any language reflecting an intent to waive or release JEDEC-related claims.   Rambus's effort to read such a

---

[8] And of course, as a sophisticated party who has given waivers, Samsung knows how to communicate a waiver when it intends one.

SAMSUNG'S OPPOSITION TO RAMBUS'S
MOTION FOR SUMMARY ADJUDICATION          21

CASE NO. C 05 00334 RMW
CASE NO. C 05 02298 RMW

waiver into the contract is contrary to California law, and Rambus's failure to produce any contemporaneous evidence to controvert the lack of any express waiver language in the contract precludes summary judgment.

**CONCLUSION**

For the foregoing reasons, Samsung respectfully requests that this Court deny Rambus' motion for summary adjudication.

1

Dated:    October 5, 2007

2

3                                              WEIL, GOTSHAL & MANGES, LLP

4

                                               By:____/s/ David J. Healey_____
5                                                        David J. Healey

6                                              MATTHEW D. POWERS (Bar No. 104795)
                                               Email:   matthew.powers@weil.com
7                                              EDWARD R. REINES (Bar No. 135930)
                                               Email:   edward.reines@weil.com
8                                              WEIL, GOTSHAL & MANGES LLP
                                               201 Redwood Shores Parkway
9                                              Redwood Shores, CA   94065
                                               Telephone:    (650) 802-3000
10                                             Facsimile:    (650) 802-3100

11                                             DAVID J. HEALEY *(admitted pro hac vice)*
                                               Email: david.healey@weil.com
12                                             ANITA E. KADALA *(admitted pro hac vice)*
                                               Email: anita.kadala@weil.com
13                                             WEIL, GOTSHAL & MANGES LLP
                                               700 Louisiana, Suite 1600
14                                             Houston, TX   77002
                                               Telephone:    (713) 546-5000
15                                             Facsimile:    (713) 224-9511

16                                             Attorneys for Defendants
                                               SAMSUNG ELECTRONICS CO., LTD.,
17                                             SAMSUNG ELECTRONICS AMERICA, INC.,
                                               SAMSUNG SEMICONDUCTOR, INC., and
18                                             SAMSUNG AUSTIN SEMICONDUCTOR, L.P

19

20

21

22

23

24

25

26

27

28