United States District Court
For the Northern District of California

1

2

3                                          E-FILED on __8/18/2008__

4

5            IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7                      SAN JOSE DIVISION

8

9    RAMBUS INC.,                          No. C-05-02298 RMW

10              Plaintiff,                  **PUBLIC REDACTED** ORDER GRANTING
                                            RAMBUS'S MOTION FOR SUMMARY
11         v.                               JUDGMENT ON COUNTS IV-VII OF
                                            SAMSUNG'S COUNTERCLAIMS
12   SAMSUNG ELECTRONICS CO., LTD.,
     SAMSUNG ELECTRONICS AMERICA,           **[Re Docket No. 828]**
13   INC., SAMSUNG SEMICONDUCTOR, INC.,
     SAMSUNG AUSTIN SEMICONDUCTOR,          **[PUBLIC REDACTED VERSION]**
14   L.P.,

15              Defendants.

16

17   RAMBUS INC.,                           No. C-05-00334 RMW

18              Plaintiff,
                                            **[Re Docket No. 1764]**
19         v.

20   HYNIX SEMICONDUCTOR INC., HYNIX
     SEMICONDUCTOR AMERICA INC.,
21   HYNIX SEMICONDUCTOR
     MANUFACTURING AMERICA INC.,
22
     SAMSUNG ELECTRONICS CO., LTD.,
23   SAMSUNG ELECTRONICS AMERICA,
     INC., SAMSUNG SEMICONDUCTOR, INC.,
24   SAMSUNG AUSTIN SEMICONDUCTOR,
     L.P.,
25
     NANYA TECHNOLOGY CORPORATION,
26   NANYA TECHNOLOGY CORPORATION
     U.S.A.,
27
                Def       endants.
28

United States District Court
For the Northern District of California

1   Plaintiff Rambus, Inc. ("Rambus") moves for summary judgment on Counts IV, V, and VI

2   and partial summary judgment on Count VII of the Second Amended Counterclaims filed by

3   defendants Samsung Electronics Co., Ltd., Samsung America Electronics, Inc., Samsung

4   Semiconductor, Inc., and Samsung Austin Semiconductor, L.P. ("Samsung").  The court held a

5   hearing and took this matter under submission.  After related discovery matters were resolved, *see*

6   *Rambus Inc. v. Samsung Electronics Co., Ltd.*, 2008 WL 2944892 (N.D. Cal. Jul. 16, 2008), the

7   court permitted Rambus and Samsung to supplement the record on the motion for summary

8   judgment.  The court has reviewed the papers and considered the arguments of counsel.  For the

9   reasons discussed below, the court grants Rambus's motion for summary judgment on counts IV, V

10  and VI and partial summary judgment on count VII.

11                                   **I.  BACKGROUND**

12  Rambus designs and patents memory interface technology and licenses it to third parties.

13  Samsung manufactures and sells a variety of DRAMs and related components allegedly covered by

14  Rambus's patents.  Rambus and Samsung's business relationship dates back to the early nineties, but

15  the present suit began when Rambus sued Samsung for patent infringement in June 2005.  Samsung

16  has asserted a variety of counterclaims against Rambus, some relating to aspects of the parties'

17  dealings from the 1998 through 2001 time period.  Count IV alleges that Rambus aided and abetted

18  Neil Steinberg (a former Samsung attorney) in breaching his fiduciary duty to a *current* client by

19  employing Mr. Steinberg while he still worked for Samsung.  Count VI alleges that Rambus

20  intentionally interfered with Samsung's contractual relations with Mr. Steinberg based on these facts.

21  Count V alleges that Rambus aided and abetted Neil Steinberg in breaching his fiduciary duty to a

22  *former* client by misusing Mr. Steinberg's knowledge of confidential Samsung information.  Finally,

23  Count VII alleges that Rambus violated California Business & Professions Code § 17200, in part by

24  committing the acts alleged in Counts IV-VI.  While these claims have differing statutes of

25  limitation, the parties agree that the claims are barred absent some form of equitable tolling or

26  application of a discovery rule.

27  Rambus has twice moved to dismiss these counterclaims as barred by the statute of

28

1  limitations, and twice this court granted the motion with leave for Samsung to amend. *See, e.g.,*
2  *Rambus Inc. v. Samsung Elecs Co., Ltd.*, 2007 WL 39374 (N.D. Cal. Jan. 4, 2007).  Rambus moved
3  to dismiss a third time, and the court converted the motion into the present motion for summary
4  judgment. *Hynix Semiconductor Inc. v. Rambus, Inc.*, 2007 WL 3284060 (N.D. Cal. Nov. 2, 2007).

5      **A.**    **Samsung's Knowledge of Neil Steinberg's Work for Rambus**

6         Charles Donohoe is an attorney who has worked for Samsung for many years, and was
7  deposed in related litigation as a 30(b)(6) corporate representative for Samsung. *See* Decl. of Burton
8  Gross, Ex. B at 11:15-12:4 (testimony from Feb. 6, 2001).  At that time, Rambus and Samsung were
9  not in litigation — the deposition had been noticed by Micron in its litigation with Rambus.  Mr.
10  Donohoe testified that Neil Steinberg began working for Samsung in 1994. *Id.* at 55:10-20.  While
11  at Samsung, Mr. Steinberg reported to Mr. Donohoe. *Id.* at 55:21-56:1.  His job duties included
12  patent prosecution, licensing, and litigation in the semiconductor field. *Id.* at 56:2-21.  Mr. Donohoe
13  was unstinting with his praise: "Neil is a very, very good attorney, and he knew the technology very,
14  very well, and he could draft claims properly in patent applications." *Id.* at 56:9-11.

15         Mr. Steinberg resigned from Samsung in August of 1998. *Id.* at 55:10-20.  By sometime in
16  1999 (and possibly earlier), Samsung knew that Mr. Steinberg was working for Rambus. *Id.* at
17  147:14-22; Gross Decl., Ex. C at 153:25-154:6.[1]  Samsung learned this through Mr. Donohoe, who
18  spoke with Mr. Steinberg in person.  Gross Decl., Ex. C at 154:7-13.

19         On January 18, 2000, Rambus sued Hitachi, a DRAM manufacturer, for patent infringement.
20  *See Rambus Inc. v. Hitachi Ltd.*, C-00-00029-GMS (D. Del. Jan. 18, 2000).  Mr. Donohoe set up a
21  meeting with Mr. Steinberg in February, 2000 and the two of them discussed the *Hitachi* litigation.
22  *See* Decl. of Carmen Bremer, Ex. 19 at 220:5-221:23 (deposition testimony of Neil Steinberg).  Mr.
23  Steinberg revealed nothing about the *Hitachi* litigation, but intimated that he was responsible for
24  directing it on behalf of Rambus. *Id.* at 221:4-14.  He also urged Mr. Donohoe to begin negotiating
25  with Rambus so that Samsung could secure a more favorable license to Rambus's DRAM patents

26

27  [1]    Mr. Donohoe was deposed as Samsung's 30(b)(6) witness regarding this subject on May 13,
28  2008.  The May 13, 2008 deposition was noticed by Rambus and occurred in these cases.

**PUBLIC REDACTED** ORDER GRANTING RAMBUS'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV-VII OF
SAMSUNG'S COUNTERCLAIMS
Nos. C-05-00334-RMW; C-05-02298-RMW
TSF
3

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   than other manufacturers. *Id.* at 221:15-23.

2       By April of 2000, Samsung and Rambus had begun licensing negotiations. *See* Gross Decl.,

3   Ex. C at 186:12-24.  At that point, Samsung knew that Mr. Steinberg "had revised the claim scope

4   coverage of the Rambus patents to target Hitachi." *Id.* at 153:10-24.  Samsung did not know when

5   Mr. Steinberg had done this, only that it happened "at some point in his employment with Rambus."

6   *Id.* at 153:22-24.

7       April also saw Mr. Steinberg writing to Samsung requesting that it waive any conflict of

8   interest stemming from him and his team (which included other past Samsung employees)

9   negotiating on behalf of Rambus. *See* Bremer Decl., Ex. 7.  Mr. Steinberg represented that he was

10  "not aware of any real or legal conflict of interest since our representation of Rambus did not start

11  until well after our respective Samsung employment." *Id.*  He also hoped Samsung could agree

12  because "other than my team there is no one to speak with regarding Rambus licensing matters" due

13  to Rambus's small size. *Id.*

14      Samsung refused to grant the waiver.  Bremer Decl., Ex. 40 ¶ 5 (decl. of Jay Shim, Samsung

15  general counsel).  Nevertheless, Samsung elected to proceed with the negotiations. *Id.*; *see also*

16  Gross Decl., Ex. B at 32:3-10.  Mr. Donohoe testified that Samsung "reserved [its] right to object to

17  what he was doing if there ever was a litigation, but [it] let them go ahead and discuss with him." *Id.*

18  at 31:11-13.  Mr. Donohoe explained that this caused Samsung "deep concern, because . . . he knew

19  our sync DRAM business inside and out, and now he's over at Rambus drafting claims on sync

20  DRAMs, which he learned from Samsung." *Id.* at 31:14-19.  Mr. Donohoe further explained that

21  despite Samsung's "deep concern," it was facing the threat of patent litigation and "we decided not to

22  raise that issue front and center in the course of negotiations." *Id.* at 31:20-32:2.  When asked if this

23  was a business decision, Mr. Donohoe responded that this was a "pure business decision, yes,

24  absolutely." *Id.* at 33:3-6.  Further elaborating in 2008, Mr. Donohoe testified that Samsung did not

25  feel that it could request that Rambus "hire somebody else to come in and negotiate." Gross Decl.,

26  Ex. C at 101:4-23.  Samsung "would have preferred it if he didn't negotiate with us" because "he

27  knew the pressure points of Samsung," but Samsung trusted Mr. Steinberg and chose to proceed. *Id.*

28

United States District Court
For the Northern District of California

1    at 101:20-102:8.

2         The negotiations intensified in July.  Around July 10, 2000, Rambus asserted that Samsung

3    was infringing its patents in a letter from Rambus's CEO to the head of Samsung's semiconductor

4    business.  Gross Decl., Ex. B at 19:4-14.  This led to a meeting in Korea on July 25, where Mr.

5    Steinberg and Rambus's CEO, Geoff Tate, met with Samsung, presented their patent portfolio, and

6    made their royalty demands.  *Id.* at 30:17-31:1.  Neil Steinberg then sent a letter from Rambus to

7    Samsung on July 28, 2000 detailing Rambus's contentions.  *Id.* at 22:10-19; *see also* Gross Decl.,

8    Ex. H (copy of the letter).  The letter explained which patents and claims Rambus believed Samsung

9    infringed, how the claims applied to Samsung's products, and how Rambus had reverse engineered

10   Samsung's products to support these contentions.  *Id.* at 23:3-19.[2]

11        By August, Samsung knew that Mr. Steinberg had negotiated Rambus's deals with it and

12   Hitachi (the litigation had settled in April).  Gross Decl., Ex. C at 139:15-140:3.  It assumed that

13   "either Neil wrote [Rambus's patent] claims or Mr. Steinberg had the claims changed under his

14   supervision and at his request."  *Id.* at 140:4-7.  Samsung knew this because it had begun reviewing

15   Rambus's patents following the July 25 meeting.  *Id.* at 140:12-141:5.  In part, Samsung knew this

16   because Neil Steinberg's name was on the patents as an attorney responsible for prosecuting them.

17   *Id.* at 141:6-19.  Samsung also knew that Mr. Steinberg was responsible for Rambus's litigation

18   strategy.  *Id.* at 141:20-142:1.

19        Mr. Donohoe's contemporaneous records confirm this testimony.  ████████████████████

20   ████████████████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████████████████████████

23   _____

24   [2]    Mr. Donohoe now testifies that he does not "think they were accusing us of infringing."
     Gross Decl., Ex. C at 169:2-9.  Mr. Donohoe believes that "they were telling us that we feel that
     Samsung would benefit by a license from Rambus of our patent portfolio.  We think our patent

25   portfolio is valuable."  *Id.* at 169:9-12.  Rambus presented Samsung with claim charts, which Mr.
     Donohoe now believes were "to help Samsung understand how Rambus construes their claims, how

26   they look at the claims and claims and how they apply their claims to our products."  *Id.* at 169:13-
     17.  According to Mr. Donohoe, the claim charts "show Samsung the value they give to Samsung

27   with a license agreement," but do not convey that "you are infringing our patents you are bad guys."
     *Id.* at 169:17-22.

28

**PUBLIC REDACTED** ORDER GRANTING RAMBUS'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV-VII OF
SAMSUNG'S COUNTERCLAIMS
Nos. C-05-00334-RMW; C-05-02298-RMW
TSF                                                     5



United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Despite these documents, Mr. Donohoe recently testified that no one at Samsung looked at Rambus's patents to determine if they reflected confidential Samsung information.  Gross Decl., Ex. C at 145:14-25.  Samsung "trusted" Mr. Steinberg not to have misused confidential information.  *Id.* Still, when asked whether Samsung "knew that Mr. Steinberg had used confidential information in prosecuting Rambus's patents," Mr. Donohoe responded that in August of 2000 Samsung "didn't *fully* appreciate that until we learned of what happened back in the 1997, 1998, 1999 time period through the court decision."  *Id.* at 233:14-23 (emphasis added).  To be clear:

---

3

PUBLIC REDACTED ORDER GRANTING RAMBUS'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV-VII OF SAMSUNG'S COUNTERCLAIMS
Nos. C-05-00334-RMW; C-05-02298-RMW
TSF

6

| | | |
|---|---|---|
| 1 | Ms. Luedtke: | But you knew that he had at least used [confidential information] in drafting and enforcing patents against Hitachi, correct? |
| 2 | | |
| 3 | Mr. Donohoe: | Yeah. What we knew is that he used his knowledge of SDRAMs to draft patent claims that targeted Hitachi. We didn't know the extent to which he did that. We didn't know the extent to which he was involved in that. But we knew that in order to draft SDRAM claims that would cover Hitachi, that the information would have had to have come from his time working at Samsung, yes. |
| 4 | | |
| 5 | | |
| 6 | Ms. Luedtke: | So as of 2000 when you knew that he was drafting SDRAM claims to use to license or to assert infringement against Hitachi, as of 2000 you knew that he had used Samsung confidential information in his patent prosecution work at Rambus, right? |
| 7 | | |
| 8 | Mr. Donohoe: | Yeah. Yes. And of course we didn't have any concern about him because he wasn't targeting us. It wasn't – we didn't believe that he had used any confidences of Samsung to attack Samsung. We didn't understand what he was doing behind the scenes. He wasn't telling us about that. |
| 9 | | |
| 10 | | |

Bremer Decl., Ex. 1 at 233:20-235:2 (objections excised).

The beginning of 2001



United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12



13   Samsung's investigation continued into February.

14
15
16

17       As mentioned, Mr. Donohoe testified on behalf of Samsung in the litigation between Micron

18   and Rambus on February 6, 2001.  In that deposition, Mr. Donohoe was asked "do you have any

19   knowledge that Mr. Steinberg, in fact, used any confidential Samsung information in connection

20   with any patent prosecution he did at Rambus."  Gross Decl., Ex. B at 146:21-147:2.  Mr. Donohoe

21   responded, "It's just a concern I have."  *Id.* at 147:3.  He explained that Mr. Steinberg had worked on

22   SDRAM patents for Samsung, picked its patents for litigation against Hitachi, "and then he left us,

23   and next thing we have is SDRAM patents appearing on our table from Rambus."  *Id.* at 147:3-11.

24   Mr. Donohoe concluded, "So it was a concern, yes, but no specific information, no."  *Id.* at 147:12-

25   13.

26                          **II.  ANALYSIS**

27       The parties' extensive briefing raises a number of issues regarding the application and tolling

28

1  of the statute of limitation given that Mr. Steinberg, not Rambus, owed Samsung a fiduciary duty.

2  Because it is not necessary to decide these questions to address this motion, the court assumes that

3  the law governing the triggering of the statute where a fiduciary is involved applies here.

4      **A.**    **The Discovery Rule**

5      The "discovery rule" provides that a statute of limitations does not begin to run until a

6  plaintiff is aware of its injury and the injury's cause. *See Jolly v Eli Lilly & Co.*, 44 Cal. 3d 1103,

7  1109. "A plaintiff is held to her actual knowledge as well as knowledge that could reasonably be

8  discovered through investigation of sources open to her." *Id.*

9      The fiduciary context modifies the discovery rule, because ordinarily a person is entitled to

10  rely on the good faith of their fiduciaries. *See Bennett v. Hibernia Bank*, 47 Cal.2d 540, 563 (1956).

11  This negates the duty to inquire into the existence of a harm or its cause "until [one] has notice of

12  facts sufficient to arouse the suspicions of a reasonable man." *Id.*  At that point, the plaintiff is

13  charged with the knowledge of a reasonable investigation, and the statute of limitations may begin to

14  run. *See id.*  The fiduciary context modifies the operation of a statute of limitations only in that the

15  "duty to investigate may arise later by reason of the fact that the plaintiff is entitled to rely upon the

16  assumption that his fiduciary is acting in his behalf." *Bedolla v. Logan & Frazer*, 52 Cal. App. 3d

17  118, 131 (1975). "But, once the plaintiff becomes aware of facts which would make a reasonably

18  prudent person suspicious, the duty to investigate arises and the plaintiff may then be charged with

19  the knowledge of facts which would have been discovered by such an investigation." *Id.*; *Miller v.*

20  *Bechtel Corp.*, 33 Cal.3d 868, 874-75 (1983) (endorsing *Bedolla*).  In sum, the cases applying the

21  discovery rule to the fiduciary context modify the time at which a plaintiff has a duty to investigate.

22  But nothing in the case law supports delaying the statute of limitations once a plaintiff has actual

23  knowledge of a claim, or at least of facts which would make a reasonable person suspicious, whether

24  in the context of a fiduciary relationship or otherwise.

25      No reasonable jury or fact finder could dispute that the evidence discussed above

26  demonstrates that Samsung was on notice of "facts which would make a reasonably prudent person

27  suspicious." By February of 2001, Samsung was well beyond suspicion.  Indeed, Samsung engaged

28

United States District Court
For the Northern District of California

1    in extensive preparation, research and investigation of its potential claims against Neil Steinberg and

2    Rambus to be ready in case it terminated the license agreement and Rambus sued.  Samsung

3    eventually chose not to terminate the license with Rambus and instead renegotiated the license.  *See*

4    *Rambus Inc. v. Hynix Semiconductor Inc.*, 2008 WL 2795135, *1 (N.D. Cal. July 15, 2008).  But

5    Samsung's business decision to avoid litigation with Rambus in the middle of 2001 did not toll the

6    statute of limitations or eliminate its knowledge of the claims that Samsung explored and could have

7    brought against Neil Steinberg and Rambus.

8            Samsung's opposition stresses that "a reasonable company in Samsung's circumstances

9    would not have been on notice inquiry of Rambus's or Steinberg's wrongdoing."  Samsung overlooks

10   that Rambus's motion turns on Samsung's *subjective* knowledge of its claims against Mr. Steinberg

11   and against Rambus.  What a reasonable company in Samsung's circumstances would have known is

12   not what dooms Samsung here.  What matters is what Samsung *actually* knew.

13           The uncontradicted documentary evidence in the record shows that Samsung possessed

14   knowledge about Mr. Steinberg's possible wrongdoing more than four years before Samsung filed its

15   counterclaims.  By August 2000 (at the latest), ████████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████████

18   ████████████████████████████████████████   Finally, the January 2001 email ████████

19   █████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████   In its

21   briefing, Samsung presents pages of argument under the heading "Samsung did not know by 2000

22   that proprietary Samsung information was being used in Rambus patents."  The court cannot accept

23   this representation – the evidence of Samsung's knowledge of Neil Steinberg's work at Rambus is

24   overwhelming.[4]

25   _____

26   [4]     Samsung's argument focuses extensively on the 2000 time frame, ████████████████████
     ████████████████████████████.  Nonetheless,

27   statements such as the following reflect overly zealous advocacy and are contrary to the evidence of
     record:

28      •    "Samsung was *not* aware in the 2000 time frame of the nature of Steinberg's work at

United States District Court
For the Northern District of California

1    To be sure, the record reflects only that Samsung knew that it had a claim against Neil

2    Steinberg for his activities after he left Samsung and went to Rambus in August of 1998. ███████

3    ████████████████████████████████████████████████████████████████████████

4    ███████████████████, but there is no evidence in the record that Samsung had actual knowledge of

5    Mr. Steinberg's alleged work on behalf of Rambus while he was at Samsung.  Rambus argues that

6    this is unimportant because Samsung's actual knowledge of some of the alleged misconduct starts

7    the statute of limitations as to all of the alleged misconduct.

8    Under California law, "the discovery of one cause of action does not necessarily mean [a]

9    plaintiff should have discovered the factual basis for a qualitatively different type of action."

10   *Grisham v. Philip Morris U.S.A., Inc.*, 40 Cal. 4th 623, 645 (2007) (explaining *Fox v. Ethicon*

11   *Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005)).  The case law is not entirely clear on when two claims

12   are "qualitatively different" enough that the discovery of one does not start the statute of limitations

13   on the other.  Nonetheless, the reasoning of *Grisham* and *Fox* guide the inquiry to consideration of

14   whether the two claims are "based on two distinct types of wrongdoing" and whether a plaintiff

15   would have been able to ethically plead the second claim based on its knowledge of the first claim.

16   *Fox*, 35 Cal. 4th at 815-15; *Grisham*, 40 Cal. 4th at 644-45.  In other words, a second claim is

17   "qualitatively different" from a first known claim if a plaintiff could not allege the second claim in

18   good faith based on the plaintiff's knowledge of the first claim.

19   The *Fox* and *Grisham* cases arise in factually different contexts, but they provide examples

20   of "qualitatively different" claims.  In *Fox*, the plaintiff suffered from a botched gastric bypass

21   surgery.  35 Cal. 4th at 803.  She sued for medical malpractice, and over the course of the lawsuit,

22   she learned that her injuries may have been caused by a failure of the staples used to close the

23   intestine.  *Id.* at 804.  She amended her claims to also allege a product liability claim against the

24

25   Rambus." Opp'n at 29 (emphasis in original).

26   •   "It was only in later years . . . that Samsung studied the hundreds of amendments that
         Steinberg made and was able to piece together the scope of Steinberg's misuse of
         confidential information.  In 2000, on the other hand, Samsung had no reason to do this

27       analysis—it remained trusting of its strategic business partner and its former lawyer who
         owed Samsung a fiduciary duty as a former client." Opp'n at 31-32.

28   **PUBLIC REDACTED** ORDER GRANTING RAMBUS'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV-VII OF
     SAMSUNG'S COUNTERCLAIMS
     Nos. C-05-00334-RMW; C-05-02298-RMW
     TSF                                                        11

United States District Court
For the Northern District of California

1    manufacturer of the stapler. *Id.* While the plaintiff's injuries arose from the same factual context

2    and injury – her complicated surgery – the two claims were based on "distinct types of wrongdoing"

3    and the discovery of one did not begin the limitations period of the second. *Id.* at 814-15. In

4    *Grisham*, the plaintiff had been induced into smoking cigarettes and suffered economic and physical

5    harm from a decades-long addiction to smoking. 40 Cal. 4th at 630. While her physical injuries

6    took years to manifest, the plaintiff knew much earlier that she was addicted to smoking. *Id.* The

7    court held that the plaintiff's unjust enrichment claims based on her addiction were barred by the

8    statute of limitations, but that her discovery that she was addicted to cigarettes did not begin the

9    limitations period for the physical injuries that later manifested from her smoking. *Id.* at 644-45.

10            Compared to the plaintiffs' claims in *Fox* and *Grisham*, Samsung's claims for relief arising

11    from the alleged aiding and abetting breach of fiduciary duty to a *current* client and the alleged

12    aiding and abetting breach of fiduciary client to a *former* client appear to be the same, or at least

13    sufficiently similar that Samsung's knowledge of the latter operates to bar the former. Had Samsung

14    timely filed its claim for aiding and abetting breach of fiduciary duty, it would have not have had to

15    plead the claim as limited to the period after Mr. Steinberg left Samsung. Instead, it could have

16    alleged that Rambus aided and abetted Mr. Steinberg's breach of fiduciary duty, and discovery into

17    that claim would have revealed that Mr. Steinberg's communications with Rambus predated his

18    departure from Samsung. In short, the alleged conduct underlying the two claims is not different.

19    Both are based on Mr. Steinberg's misuse of confidential information, and pleading one could have

20    encompassed the other. While Samsung pleaded the claims separately, they are not "qualitatively

21    different" and not "distinct types of wrongdoing." Samsung's claim is for the misuse of confidential

22    information that Mr. Steinberg obtained at Samsung. Whether the information was first passed on to

23    Rambus while Mr. Steinberg was still employed by Samsung or after he left seems of no

24    consequence.

25            Whether Samsung's claim for intentional interference with contract is "qualitatively similar"

26    to its aiding and abetting claim is difficult to discern, in large part because Samsung has never

27    clearly articulated its requested relief on this theory of the case. But to the extent that Samsung's

28

United States District Court
For the Northern District of California

1    claim for intentional interference seeks to recoup damages for Mr. Steinberg's alleged misuse of

2    confidential information, it is just another legal title for a claim arising from the conduct Samsung

3    knew about and could have alleged in a timely manner.  If, on the other hand, Samsung's claim

4    sought to recover Mr. Steinberg's salary for the period of his alleged dual-employment, the claim

5    would be qualitatively different because the harm is distinct and there is no evidence in the record

6    that Samsung knew until much later that Mr. Steinberg had been employed by Rambus when he was

7    still working at Samsung.  An erroneous payment of salary, however, does not appear to be the

8    gravamen of Samsung's intentional interference claim.  Instead, Samsung's pleading is focused on

9    allegations that Mr. Steinberg misused Samsung's confidential information in prosecuting Rambus's

10   patents and planning its litigation.  Accordingly, the claim does not appear to be "qualitatively

11   different" from Samsung's claim based on breach of fiduciary duty.  Indeed, to the extent to which

12   Samsung's claim based on Rambus's interference with Neil Steinberg's ongoing contractual non-

13   disclosure obligations could be said to be "qualitatively different," the qualitative difference is of no

14   consequence because Samsung knew that it had a basis for such a claim in late 2000 and early 2001.

15        The longest statute of limitations applicable to Samsung's counterclaims is four years.[5]  As

16   demonstrated, Samsung possessed knowledge of its claims by sometime in February of 2001, at the

17   latest.  Therefore, Samsung's claims against Rambus had to be filed no later than February of 2005.[6]

18   Samsung's claims were not filed until June of 2005.  Accordingly, the court grants Rambus's motion

19   for summary judgment on Samsung's fourth, fifth and sixth counterclaims.  The court grants partial

20   summary judgment on Samsung's seventh claim for unfair competition based on the violations of

21   law alleged the fourth through sixth counterclaims.

22        **B.    Equitable Tolling Based On Fraudulent Concealment**

23

24   [5]    The statute of limitations with respect to Samsung's unfair competition claim is four years.
25   *See* Cal. Bus. & Prof. Code §§ 17200, 17208.

26   [6]    Rambus filed its claims against Samsung on June 5, 2005.  Samsung answered and
     counterclaimed on June 22, 2005.  The parties have not briefed which date is the triggering date
27   from the statue of limitations should be calculated, presumably because the conduct which Rambus
     claims commenced the running of the statute of limitations occurred more than four years before
28   even the earlier of the two dates.

1    The doctrine of fraudulent concealment cannot toll a statute of limitations where the plaintiff
2    actually has notice of the claim. *Rita M. v. Roman Catholic Archbishop*, 187 Cal. App. 3d 1453,
3    1460 (1986). Accordingly, the court grants Rambus's motion for summary judgment and partial
4    summary judgment as described above.

### III. ORDER

6    For the foregoing reasons, the court grants Rambus's motion for summary judgment on
7    counts IV, V and VI and partial summary judgment on count VII.

8    This ruling sufficiently narrows the scope of the issues to be tried in the September trial that
9    the parties should no longer require 20 hours per side. It would appear that twelve hours per side
10   should suffice, but the court will finalize the time allocation prior to the start of trial.

11   An unredacted copy of this order will be publicly filed within seven (7) days of the date of
12   this order, absent a meritorious request by a party that certain portions of the order be redacted from
13   the publicly filed copy.

16   DATED:    8/11/2008

*Ronald M Whyte*

RONALD M. WHYTE
United States District Judge

PUBLIC REDACTED ORDER GRANTING RAMBUS'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV-VII OF
SAMSUNG'S COUNTERCLAIMS
Nos. C-05-00334-RMW; C-05-02298-RMW
TSF                                                              14

**Notice of this document has been electronically sent to counsel in C-05-00334 & C-05-02298.**

| Counsel for Rambus Inc., all actions | | Counsel for Hynix entities, C-00-20905 and C-05-00334 | |
|---|---|---|---|
| Burton Alexander Gross | Burton.Gross@mto.com | Allen Ruby | ruby@allenrubylaw.com |
| Carolyn Hoecker Luedtke | carolyn.luedtke@mto.com | Belinda Martinez Vega | bvega@omm.com |
| Catherine Rajwani | crajwani@sidley.com | Daniel J. Furniss | djfurniss@townsend.com |
| Craig N. Tolliver | ctolliver@mckoolsmith.com | Geoffrey Hurndall Yost | gyost@thelenreid.com |
| David C. Yang | david.yang@mto.com | Jordan Trent Jones | jtjones@townsend.com |
| Douglas A. Cawley | dcawley@mckoolsmith.com | Joseph A. Greco | jagreco@townsend.com |
| Erin C. Dougherty | erin.dougherty@mto.com | Kenneth Lee Nissly | kennissly@thelenreid.com |
| Gregory P. Stone | gregory.stone@mto.com | Kenneth Ryan O'Rourke | korourke@omm.com |
| Jennifer Lynn Polse | jen.polse@mto.com | Patrick Lynch | plynch@omm.com |
| Keith Rhoderic Dhu Hamilton, II | keith.hamilton@mto.com | Susan Gregory VanKeulen | svankeulen@thelenreid.com |
| Kelly Max Klaus | kelly.klaus@mto.com | Theodore G. Brown, III | tgbrown@townsend.com |
| Miriam Kim | Miriam.Kim@mto.com | Tomomi Katherine Harkey | tharkey@thelen.com |
| Peter A. Detre | detrepa@mto.com | **Counsel for Micron entities, C-06-00244** | |
| Pierre J. Hubert | phubert@mckoolsmith.com | Aaron Bennett Craig | aaroncraig@quinnemanuel.com |
| Rosemarie Theresa Ring | rose.ring@mto.com | David J. Ruderman | davidruderman@quinnemanuel.com |
| Scott L Cole | scole@mckoolsmith.com | Harold Avrum Barza | halbarza@quinnemanuel.com |
| Scott W. Hejny | shejny@sidley.com | Jared Bobrow | jared.bobrow@weil.com |
| Sean Eskovitz | sean.eskovitz@mto.com | John D Beynon | john.beynon@weil.com |
| Steven McCall Perry | steven.perry@mto.com | Leeron Kalay | leeron.kalay@weil.com |
| Thomas N Tarnay | ttarnay@sidley.com | Linda Jane Brewer | lindabrewer@quinnemanuel.com |
| William Hans Baumgartner, Jr | wbaumgartner@sidley.com | Rachael Lynn Ballard McCracken | rachaelmccracken@quinnemanuel.com |
| | | Robert Jason Becher | robertbecher@quinnemanuel.com |
| | | Yonaton M Rosenzweig | yonirosenzweig@quinnemanuel.com |

**PUBLIC REDACTED** ORDER GRANTING RAMBUS'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV-VII OF SAMSUNG'S COUNTERCLAIMS
Nos. C-05-00334-RMW; C-05-02298-RMW
TSF

15

United States District Court
For the Northern District of California

| Counsel for Nanya entities, C-05-00334 | | Counsel for Samsung entities, C-05-00334 and C-05-02298 | |
|---|---|---|---|
| Chester Wren-Ming Day | cday@orrick.com | Ana Elena Kadala | anita.kadala@weil.com |
| Craig R. Kaufman | ckaufman@orrick.com | Claire Elise Goldstein | claire.goldstein@weil.com |
| Glenn Michael Levy | glevy@orrick.com | David J. Healey | david.healey@weil.com |
| Jan Ellen Ellard | jellard@orrick.com | Edward Robert Reines | Edward.Reines@weil.com |
| Jason Sheffield Angell | jangell@orrick.com | Matthew D. Powers | matthew.powers@weil.com |
| Kaiwen Tseng | ktseng@orrick.com | | |
| Mark Shean | mshean@orrick.com | | |
| Robert E. Freitas | rfreitas@orrick.com | | |
| Vickie L. Feeman | vfeeman@orrick.com | | |

| Counsel for intervenor, Texas Instruments, Inc., C-05-00334 | |
|---|---|
| Kelli A. Crouch | kcrouch@jonesday.com |
| **Counsel for intervenor, United States Department of Justice, C-00-20905** | |
| Eugene S. Litvinoff | eugene.litvinoff@usdoj.gov |
| May Lee Heye | may.heye@usdoj.gov |
| Nathanael M. Cousins | nat.cousins@usdoj.gov |
| Niall Edmund Lynch | Niall.Lynch@USDOJ.GOV |
| **Counsel for intervenor, Elpida Memory, Inc., C-00-20905 and C-05-00334** | |
| Eric R. Lamison | elamison@kirkland.com |
| John J. Feldhaus | jfeldhaus@foley.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program in each action.

Dated:   8/11/2008                         TSF
                                    **Chambers of Judge Whyte**

PUBLIC REDACTED ORDER GRANTING RAMBUS'S MOTION FOR SUMMARY JUDGMENT ON COUNTS IV-VII OF SAMSUNG'S COUNTERCLAIMS
Nos. C-05-00334-RMW; C-05-02298-RMW
TSF                                16